IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REVERE TACTICAL OPPORTUNITIES REIT, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| JEFFERSON HILLS ACQUISITION LLC, BEAVER HEALTHCARE REAL ESTATE, LLC, MULBERRY HEALTHCARE REAL ESTATE, LLC, RIDGEVIEW HEALTHCARE REAL ESTATE, LLC, LAKEVIEW HEALTHCARE REAL ESTATE, LLC, SCOTTDALE HEALTHCARE REAL ESTATE, LLC, JEFFERSON HILLS OPERATING LLC, BEAVER HEALTHCARE OPERATING, LLC, MULBERRY HEALTHCARE OPERATING, LLC, RIDGEVIEW HEALTHCARE OPERATING, LLC, LAKEVIEW HEALTHCARE OPERATING LLC, and SCOTTDALE HEALTHCARE OPERATING, LLC, | § § § § § § § § § § § § § § § § § § § § | CASE NO. 3:24-cv-52 |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND EMERGENCY APPLICATION FOR APPOINTMENT OF RECEIVER**

Plaintiff Revere Tactical Opportunities REIT, LLC ("Plaintiff," "Revere," or Lender")[1]

files this Original Complaint and Emergency Application for Appointment of Receiver against

Defendants Jefferson Hills Acquisition LLC ("Jefferson Owner"), Beaver Healthcare Real Estate,

---

[1] As used, "Lender" shall refer to Revere and Bravo Bridge Fund LLC collectively. Bravo Bridge Fund LLC (the "Original Lender") entered into the Loan Documents (defined below) with Borrowers on June 27, 2022. Shortly thereafter, Original Lender assigned the Loan (defined below) and Loan Documents to Revere.

LLC ("Beaver Owner"), Mulberry Healthcare Real Estate, LLC ("Mulberry Owner"), Ridgeview Healthcare Real Estate, LLC ("Ridgeview Owner"), Lakeview Healthcare Real Estate, LLC ("Lakeview Owner"), and Scottdale Healthcare Real Estate, LLC, each a Delaware limited liability company ("Scottdale Owner", and together with Jefferson Owner, Beaver Owner, Mulberry Owner, Ridgeview Owner and Lakeview Owner, individually and collectively, "Property Owners"), Jefferson Hills Operating LLC ("Jefferson Operator"), Beaver Healthcare Operating, LLC ("Beaver Operator"), Mulberry Healthcare Operating, LLC ("Mulberry Operator"), Ridgeview Healthcare Operating, LLC ("Ridgeview Operator"), Lakeview Healthcare Operating LLC ("Lakeview Operator"), and Scottdale Healthcare Operating, LLC, each a Delaware limited liability company ("Scottdale Operator" (collectively, "Operators," and together with Property Owners, "Defendants" or "Borrowers"). In support thereof, Revere respectfully states as follows:

# I.
## INTRODUCTION

Revere brings this Emergency Application because Defendants' regulatory, financial, and contractual failures have not only caused material breaches to a $30,591,000.00 Loan Agreement, but have also exposed residents and patients at six Skilled Nursing Facilities to an imminent risk of irreparable harm. The Property Owners own skilled nursing facilities, continuing care retirement facilities, and a personal care facility that are operated by the Operators (the "Facilities") in Allegheny County, Beaver County, Jefferson County, Clearfield County, McKean County, and Westmoreland County.[2] In connection with owning and operating these skilled nursing Facilities, Defendants obtained a loan in the amount of $30,591,000 from Revere (the "Loan"). Since

---

[2]     The six Skilled Nursing Facilities at issue are: (1) Jefferson Hills Healthcare and Rehabilitation Center; (2) Lakeview Healthcare and Rehabilitation Center; (3) Ridgeview Healthcare and Rehabilitation Center; (4) Scottdale Healthcare and Rehabilitation Center; (5) Beaver Healthcare and Rehabilitation Center; and (6) Mulberry Healthcare and Rehabilitation Center.

December of 2023, Defendants have failed to pay the money owed to Revere pursuant to the documents governing the Loan, constituting a default of the Loan. As a result of Defendants' default, Revere has the right to exercise its remedies pursuant to the Loan Documents (defined below), including seeking an order from this Court allowing a temporary receiver to take possession of and operate the Facilities.

As an initial matter, workers at Ridgeview have been left in a dire financial state, with delayed wages not only affecting the employees' ability to meet their basic needs but have also led to a cascade of unpaid bills and financial obligations at the facility. Likewise, staff members at Jefferson Hills recently walked off the job due to delayed paychecks or none at all. To that end, the facilities located within the Western District of Pennsylvania are the subject to lawsuits and news articles about the dire financial condition of the various properties. Employees and newspapers are also reporting that the Skilled Nursing Facilities are closing down and shutting their doors because of understaffing caused by the failure to pay wages. "One of our daylight nurses just told us that the building is indefinitely closing. That they don't know how we're being paid and the residents are being relocated to other buildings around the area."

In the last week, Pittsburgh's Action News 4 and other media outlets have highlighted the damage being done to the facilities' goodwill, reputation, and patient safety, workers are walking off the job and refusing to work (putting patient safety at risk), and the Pennsylvania Department of Health has been doing Medicare/Medicaid inspections at the Jefferson Hills nursing home this past week.[3] To that end, at least a half dozen regulatory violations and citations have been levied

---

[3] *See* News Articles, attached hereto as **Exhibits 1–4**: (1) https://www.wtae.com/article/jefferson-hills-nursing-home-workers/60050513; (2) https://www.wtae.com/article/unpaid-nursing-home-workers-walk-off-job-at-jefferson-hills-healthcare-and-rehabilitation/46997212; (3) https://www.bradfordera.com/news/smethport-unpaid-workers-lawsuits-trouble-lakeview-nursing-facility/article_95347b20-d5b6-11ee-985e-570645690eab.html,

against the various nursing homes over the last several months and vendors have filed, or are threatening to file lawsuits over non-payment issues. These vendors include food service and others—all directly caused by the Property Owners and Operators' failures to effectively manage the properties.

Appointing a temporary receiver is of urgent necessity to prevent irreparable harm to the collateral securing the Loan, which includes the Facilities and the business of the Facilities. An emergency receiver is also necessary to prevent further harm to the reputation and goodwill of the Facilities and to ensure immediate patient and resident safety, as well as ensure continuity of care by paying the Facilities' employees and staff. Importantly, the Loan Documents, including the Mortgage signed by Defendants, grants Revere the right to take over management of the Facilities in the event of a breach:

> (f)    Receiver.  If any Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the sufficiency or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a temporary receiver to take possession of and to operate the Project and to collect and apply the Rents and Accounts.  The temporary receiver shall have all the rights and powers permitted under the laws of the state where the Land is located.  Upon application to a court of competent jurisdiction and compliance with the applicable laws of the state where the Land is located, such temporary receiver shall be appointed as a permanent receiver in accordance with applicable law.  Borrower shall pay unto Lender upon demand all expenses, including receiver's fees, reasonable attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Section, and upon Borrower's failure to pay the same, any such amounts shall be added to the Indebtedness and shall be secured by this Mortgage and the other Loan Documents.

Open End Mortgage and Security Agreement, attached hereto as **Exhibit 5**, ¶ 8(f).

---

and    (4)    https://bnnbreaking.com/world/us/unpaid-wages-crisis-hits-ridgeview-healthcare-in-curwensville-pa-employees-demand-justice (all accessed March 4, 2024).

Defendants unequivocally breached the Mortgage and Loan Documents, which grants Revere an automatic right to receivership—without notice. Although Revere is providing Defendants with notice, Revere nevertheless requests emergency relief because of the urgency caused by the risk of irreparable harm to the Facilities, the harm to the Facilities' employees, damage to the Facilities reputation and goodwill, and the danger posed to the Facilities' residents if a competent manager and receiver are not appointed immediately. Given the news that Jefferson Hills may shut its doors permanently and the ongoing threat that employees walk off the job for lack of payment, there is an imminent risk of irreparable harm that must be addressed by an emergency receiver.

The lack of financial stability is a direct result of Defendants' mismanagement of the Facilities. Without the immediate appointment of a receiver, Defendants are likely to render the Facilities essentially valueless, meaning Revere's security interest will be worthless, employees will continue to defect from their jobs, and residents will face dire safety conditions. Revere has found a receiver ready, willing, and able to step in and act as a receiver upon the Court's appointment.[4]

## II.
## PARTIES

1.      Plaintiff Revere Tactical Opportunities REIT, LLC is Delaware limited liability company with its principal place of business in Texas. Revere is owned by Revere Tactical Opportunities Fund IV, LP, which is a Delaware limited partnership. The general partner of Revere Tactical Opportunities Fund IV, LP is Revere Fund IV GP, LP, a Texas limited partnership. Revere

---

[4]      Flanagan & Associates, LLC, **www.mffllc.com**.

Fund IV GP, LP is owned by Revere Capital LLC and Revere Capital Corporation, both of which are solely owned by Clark Briner, a citizen of Texas.

2.      Defendants Jefferson Hills Acquisition LLC, Beaver Healthcare Real Estate, LLC, Mulberry Healthcare Real Estate, LLC, Ridgeview Healthcare Real Estate, LLC, Lakeview Healthcare Real Estate, LLC, and Scottdale Healthcare Real Estate, LLC are Delaware limited liability companies with their principal places of business in Pennsylvania. The members of the Property Owners are Simcha Hyman, Eli Puretz, Mordechai Zidele, and Shaya Zidele. Simcha Hyman is an individual residing in New York. Eli Puretz, also known as Chaim Puretz, is an individual residing in New Jersey. Mordechai Zidele is an individual residing in New York. Shaya Zidele is an individual residing in New York.

3.      Defendants Jefferson Hills Operating LLC, Beaver Healthcare Operating, LLC, Mulberry Healthcare Operating, LLC, Ridgeview Healthcare Operating, LLC, Lakeview Healthcare Operating, LLC, and Scottdale Healthcare Operating, LLC are Delaware limited liability companies with their principal places of business in Pennsylvania. The members of the Operators are Mordechai Zidele and Shaya Zidele, both individuals residing in New York.

### III.
### JURISDICTION AND VENUE

4.      Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because all or substantially all events or omissions giving rise to Revere's claims arose in the Western District of Pennsylvania and all of the Facilities that are the subject of this action are located in the Western District of Pennsylvania.

5.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because (1) Defendants are not citizens of any state of which Revere is also a citizen, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

# IV.
# FACTUAL BACKGROUND

## A.  The Loan Documents

6.  Effective June 27, 2022, Defendants entered into several agreements related to the

Loan of $30,591,000.00 in connection with Defendants' ownership and operation of the Facilities.

7.  In total, the Facilities maintain 425 beds available to residents in need of skilled

nursing and rehabilitation within the Western District of Pennsylvania.

8.  These agreements, the "Loan Documents," include:

a.  The Loan Agreement dated June 27, 2022 (as amended and assigned, the "Loan Agreement");

b.  The Promissory Note in the original principal amount of $30,591,000.00 (as amended and assigned, the "Note");

c.  The Open-End Mortgage and Security Agreement dated June 27, 2022 (as amended and assigned, the "Mortgage");

d.  The Replacement Reserve Escrow and Security Agreement dated June 27, 2022 (as amended and assigned, the "Replacement Security Agreement");

e.  The Repair Reserve Escrow and Security Agreement dated June 27, 2022 (as amended and assigned, the "Repair Security Agreement");

f.  The Assignment and Pledge of Membership Interests dated June 27, 2022 among Yeshayahu Zidele, Mordechai Zidele, Adesse Holdings LLC, and Jefferson Hill Investor LLC for the benefit of Original Lender and guaranteed by Simcha Hyman, Yeshayahu Zidele, Mordechai Zidele, Guardian Acquisition, LLC, and Bonamour Health Group, LLC (as amended and assigned, the "Pledge Agreement"); and

g.  Any other document executed in connection with the Loan.

9.  Of the Loan Documents, the most relevant here are the Loan Agreement, Note, and

Mortgage. *See* **Exhibit 6**, a true and correct copy of the Loan Agreement. The Loan Agreement

memorializes the Loan and sets forth certain obligations of Defendants. Defendants executed the

Note in favor of Lender for the full amount of the Loan. *See* **Exhibit 7**, a true and correct copy of

the Note. The Mortgage grants a first-priority security interest to Lender of the properties on which

the Facilities are located, as well as several items related to the operation of the Facilities (*e.g.*,

deposit accounts, rent payments, profits) (the "Mortgaged Property"). *See* Exhibit 5, Mortgage;

Ex. 6, Loan Agreement at § 3.12.

**B.      Defendants' Defaults**

10.      In addition to pledging the Mortgaged Property as collateral, the Note sets forth

certain payment obligations of Defendants. Specifically, Defendants are required to pay interest

on the Loan at a rate that is adjusted on the last business day of each month (the "Debt Service

Payments"). Ex. 7, Note at §§ 1–2. Defendants are required to make the Debt Service Payments

on the first day of each month. Ex. 7, Note at § 1.

11.      Any failure to make the Debt Service Payment that continues unremedied for a

period of ten calendar days constitutes an "Event of Default" under the Note, Loan Agreement,

and Mortgage. Ex. 7, Note at § 9; Ex. 6, Loan Agreement at § 6.1; Ex. 5, Mortgage at § 1(j).

12.      The Loan Agreement states that if an Event of Default occurs,

> Lender shall be entitled to exercise all rights of Lender under any Loan Documents
> or at law, equity, or otherwise. Lender's remedies in the event of an Event of
> Default shall include, but are not limited to, those remedies set forth in <u>Section 8</u> of
> the Mortgage.

Ex. 6, Loan Agreement at § 6.3.

13.      Section 8 of the Mortgage lists several remedies available to Lender if an Event of

Default occurs, including the right to a temporary receiver:

> Lender, upon application to a court of competent jurisdiction, shall be entitled as a
> ***matter of strict right***, ***without notice*** and without regard to the sufficiency or value
> of any security for the Indebtedness or the solvency of any party bound for its
> payment, ***to the appointment of a temporary receiver to take possession of and to
> operate the [Facilities] and to collect and apply the Rents and Accounts***.

Ex. 5, Mortgage at § 8(f) (emphasis added).

14.    Defendants failed to make Debt Service Payments on December 1, 2023, January 1, 2024, and February 1, 2024, and Defendants still have not made those Debt Service Payments. Defendants' agent has conceded that each Event of Default occurred.

15.    Each failure to make a Debt Service Payment constitutes an Event of Default, allowing Revere to seek an order from this Court appointing a receiver.

16.    Defendants' failures to make the Debt Service Payments also constitute breaches of the Note.

17.    Foreclosure is also not an option to protect Revere. Section 201.12 of the Pennsylvania Code provides that "[a] person may not operate or assume ownership of a facility without first obtaining a license from the Department." Likewise, Section 201.12(a.2) provides "[a] prospective licensee of a facility shall obtain an application form from the Division of Nursing Care Facilities, Department of Health." 28 Pa. Code § 201.12. Here, there is insufficient time for Revere to submit an application and obtain a license to own the six Facilities at issue in this case. The conditions at the Facilities are such that urgent relief is necessary before a change in ownership and licensure can occur.

**C.    Mismanagement and Financial Instability of Defendants Causing Imminent Risk of Irreparable Harm – Emergency Receiver is Necessary.**

18.    Defendants' failures to make Debt Service Payments are not only Events of Default under the Loan and breaches of the Note. The failures also raise serious concerns with Defendants' financial stability, and in turn, the value of the Mortgaged Property—the collateral for the Loan— and, more importantly, the ability of Defendants to continue operating the Facilities and providing important healthcare services to the Facilities' patients and residents. The imminent risk of irreparable harm is not speculative. It is causing current, ongoing, and serious risks of harm to the Facilities employees, residents, and Revere. In fact, the failure to pay Revere is not an isolated

incident. Defendants have failed to pay employees and Facility staff, they have failed to pay vendors, *and* they have failed to pay the interest on the Note.

19.     Since February 27, 2024, there have been no less than four news articles discussing the risk of irreparable harm to Facilities' employees, staff, and residents:



Ex. 1, https://www.wtae.com/article/jefferson-hills-nursing-home-workers/60050513



Ex. 3, https://www.bradfordera.com/news/smethport-unpaid-workers-lawsuits-trouble-lakeview-nursing-facility/article_95347b20-d5b6-11ee-985e-570645690eab.html

## Unpaid Wages Crisis Hits Ridgeview Healthcare in Curwensville, PA: Employees Demand Justice

At Ridgeview Healthcare, employees endure financial hardship due to unpaid wages. With union support, they seek justice and fair labor practices.

Ex. 4, https://bnnbreaking.com/world/us/unpaid-wages-crisis-hits-ridgeview-healthcare-in-curwensville-pa-employees-demand-justice.

"My initial reaction to the situation was shock," says certified nursing assistant Nikoe Medina. "I've never experienced, in the 27 years that I've been working, ever experienced something where I did not get paid on time."

Jefferson Hills Healthcare and Rehabilitation is owned by the Bonamour Health Group, which has a total of six facilities in western Pennsylvania.

Employees say they have not been given an adequate explanation by the facility administrator about why they haven't been paid,

Administrator Meribeth Tarpley did not respond to a request for a statement to address concerns of employees.

Ex. 2, https://www.wtae.com/article/unpaid-nursing-home-workers-walk-off-job-at-jefferson-hills-healthcare-and-rehabilitation/46997212.

20. In fact, GLC On-The-Go, Inc. ("GLC"), a company that provided staffing services

for two of the Defendants, also had to file a lawsuit to recover payment owed by those Defendants

for services GLC provided under a contract between two Defendants and GLC. *See* Complaint, *GLC On-The-Go, Inc. v. Bonamour Health Grp., LLC*, No. 2:23-cv-2031 (W.D. Pa. Nov. 27, 2023), ECF No. 1.

21.     Further, the Pennsylvania Department of Health and Human Services issued a Statement of Deficiencies and Plan of Correction on November 22, 2023, stating that one Defendant violated state regulations by failing to timely pay its vendors. *See* Ex. 8, November 22, 2023 Statement of Deficiencies and Plan of Correction for Lakeview Healthcare and Rehab.

22.     Aside from providing further proof of Defendants' financial issues, this apparent pattern of failing to pay vendors threatens Lender's collateral and has led to at least some employees simply walking off the job—causing a substantial staff shortage to care for the vulnerable population in these Facilities. Further, if Defendants continue to withhold payment from vendors, there is also an imminent risk that vendors will stop supplying services and materials to the Facilities and/or will place competing liens on the Mortgaged Property, making the collateral much less valuable, if not entirely worthless. The Mortgage specifically contemplates a receiver being appointed to maintain the Collateral under the Loan Documents and to ensure continuity of service and safety of residents. *See* Ex. 5, Mortgage at § 8(f).

23.     The Pennsylvania Department of Health and Human Services has also levied citations or noted violations at some of the Facilities in the past three months. For example, since the beginning of December 2023, at least three of the Facilities received the following citations:

   a.   **Ex. 9**, January 3, 2024 Statement of Deficiencies and Plan of Correction for Lakeview Healthcare and Rehab;

   b.   **Ex. 10**, December 7, 2023 Statement of Deficiencies and Plan of Correction for Mulberry Healthcare and Rehabilitation Center. At least one Facility failed to conduct various inspections required.

     c.   **Ex. 11**, December 5, 2023 Statement of Deficiencies and Plan of Correction for Mulberry Healthcare and Rehabilitation Center. In the past three months, the Department of Health and Human Services has identified structural issues constituting regulatory violations at two or more of the Facilities.

     d.   **Ex. 12**, December 5, 2023 Statement of Deficiencies and Plan of Correction for Mulberry Healthcare and Rehabilitation Center;

     e.   **Ex. 13**, December 11, 2023 Statement of Deficiencies and Plan of Correction for Scottdale Healthcare and Rehabilitation Center.

24.    All of these violations indicate that Defendants do not have the financial ability to manage and operate the Facilities in compliance with the many applicable federal and state regulations. If Defendants continue to control the Facilities, the demise of the Facilities is inevitable—either because Defendants simply cannot afford to keep the Facilities open or because the Department of Health and Human Services must shut down the Facilities because of continued violations. Either outcome would not only cause irreparable harm to Revere but would also disrupt care and present serious risks to the Facilities' residents.

25.    To summarize, Defendants' management of the Facilities has resulted in:

     a.   Three missed Debt Service Payments;

     b.   Unpaid vendors, which is not only a regulatory violation but also presents serious issues for Lender's collateral;

     c.   Several recent citations by the Pennsylvania Department of Health and Human Services relating to patient safety; and

     d.   A decline in occupancy at the Facilities, causing a decrease in value of Lender's collateral and indicating a distrust in the safety of the Facilities.

26.    If Defendants are permitted to continue controlling the Facilities and the Mortgaged Property in general, Lender's collateral will become meaningless, and the Facilities' residents will be at risk of receiving subpar care until they are forced to find another facility.

**V.**
**RELIEF REQUESTED**

**A.      Count I: Unopposed Emergency Application for Appointment of Receiver**

27.      Revere incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

28.      Revere hereby moves the Court pursuant to 231 Pa. Code § 1533 and the Mortgage to grant Revere a General and/or Equity Appointment to oversee the management and operation of the Facilities owned by the Property Owners and operated by the Operators. Specifically, Revere requests the right to recover possession of the Facilities via the issuance of a temporary and later permanent receiver against Defendants and ordering Defendants to assist with the orderly transfer of the Facilities to Receiver Flanagan & Associates, or whomever the Court appoints.

29.      The Mortgage expressly allows for the appointment of a receiver in the case of an Event of Default. Ex. 5, Mortgage at § 8(f).

> (f)      Receiver.  If any Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the sufficiency or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a temporary receiver to take possession of and to operate the Project and to collect and apply the Rents and Accounts|  The temporary receiver shall have all the rights and powers permitted under the laws of the state where the Land is located.  Upon application to a court of competent jurisdiction and compliance with the applicable laws of the state where the Land is located, such temporary receiver shall be appointed as a permanent receiver in accordance with applicable law.  Borrower shall pay unto Lender upon demand all expenses, including receiver's fees, reasonable attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Section, and upon Borrower's failure to pay the same, any such amounts shall be added to the Indebtedness and shall be secured by this Mortgage and the other Loan Documents.

30.      Under Pennsylvania law, the terms of loan documents—such as the Note and Mortgage—are binding on the parties thereto and courts are to honor the terms of such documents and appoint a receiver when a contract specifically provides for the remedy of a receivership. *See*

*Metro. Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 891 (Pa. Super. Ct. 1994); *Globe Solvents v. Nouskhaiian*, 24 A.2d 687, 690 (Pa. Super. Ct. 1942).

31.     Further, it is well established under Pennsylvania law that "parties have the right to make their own contract, and it is not the function of a court to rewrite it or to give it a construction in conflict with the accepted and plain meaning of the language used." *See Meeting House Lane, Ltd. v. Melso*, 628 A.2d 854, 857 (Pa. Super. Ct. 1993) (quoting *Amoco Oil Co. v. Snyder*, 478 A.2d 795, 798 (Pa. 1984)). Accordingly, courts must give effect to the intent of the parties when the terms of a contract are clear. *First Phila. Realty Corp. v. Albany Sav. Bank*, 609 F. Supp. 207, 210 (E.D. Pa. 1985).

32.     Here, Section 8(f) of the Mortgage clearly and unambiguously provides Lender with the "strict right" to have a receiver appointed following an Event of Default. The Mortgage also provides the receiver shall have broad powers once appointed. *See* Ex. 5, Mortgage at § 8(f).[5] Likewise, Pennsylvania law provides "A temporary receiver may be appointed without notice if required by the exigencies of the case." 231 Pa. Code § 1533. The exigencies of this case require an emergency receiver be appointed over the Jefferson Hills, Beaver Healthcare, Mulberry Healthcare, Ridgeview Healthcare, Lakeview Healthcare, and Scottdale Healthcare Facilities.

33.     Because Defendants have caused Events of Default and the Mortgage unambiguously gives Lender the "strict right" to appointment of a receiver upon an Event of Default, and because the Court is required to give effect to the intent of the parties when the language of a contract is clear—such as the language of the Mortgage—the Court should appoint a receiver in accordance with Section 8(f) of the Mortgage.

---

[5]     The Mortgage also provides that Lenders are entitled to the appointment of a receiver without notice to Defendants. Ex. 5, Mortgage at § 8(f). Despite this, Lender is attempting to provide notice to Defendants as expeditiously as possible.

34.     Further, a receiver is necessary to protect Lender's security interest by ensuring that the value of the Mortgaged Property—Defendants' collateral for the Loan—is not impaired any further. By committing numerous Events of Default, and violating various federal and state regulations, Defendants have demonstrated their inability to properly manage and operate the Facilities. If a receiver is not appointed, Lender will be at risk of further injury due to Defendants' continued mismanagement of the Facilities and other Mortgaged Property.

35.     A receiver is further necessary to ensure that the Facilities remain open and that the care of the patients and residents at the Facilities is not disrupted. A receiver is also necessary to ensure the Facilities' employees do not walk off the job from a lack of payment. In total, the Facilities maintain 425 beds available to residents in need of skilled nursing and rehabilitation within the Western District of Pennsylvania. Defendants' mismanagement of the Facilities puts the care and treatment of the current residents of the Facilities at risk and compromises the availability, integrity, and reputation of the Facilities going forward.

36.     Further, Revere has met its burden of demonstrating a substantial likelihood that immediate and irreparable harm may result if the receiver is not appointed, and if it is not able to take over management and possession of the Facilities, Revere, as owner of the Collateral security the Loan Documents, is being deprived of property which it rightfully owns, while Defendants remain in possession of the Facilities without any consequences.

37.     On balance, the potential harm to Revere, the employees, and the residents far outweighs any harm to Defendants that would result from granting Revere the receivership it seeks. Granting the receivership will not cause Defendants any harm because they already agreed to the appointment (in the Mortgage) and have demonstrated an ongoing failure to comply with their legal obligations.

38.     For the foregoing reasons, Revere respectfully requests the Court enter an order appointing Michael Flanagan as the temporary receiver and awarding him the powers set forth in Section 8(f) of the Mortgage. A curriculum vitae detailing the background and relevant experience of Mr. Flanagan is attached hereto as Exhibit 14.

39.     As detailed in Exhibit 14, Mr. Flanagan of Flanagan & Associates, L.L.C ., is well-established in the long-term healthcare field and serving as a healthcare receiver, having over thirty-five years of experience and having served as a receiver in the healthcare field in over three-hundred circumstances.

40.     If appointed as receiver by this Court, Mr. Flanagan has agreed to serve and be compensated on the terms and conditions as set forth within the Proposed Order of Court, subject to approval of this Court.

41.     Revere is willing to file a bond "in an amount fixed and with security approved by the court, naming the Commonwealth as oblige." 231 Pa. Code § 1533(a)(1).

42.     Bonamour Health Group, which owns the Facilities, does not oppose the appointment of a receiver as requested herein. *See* Exhibit 15.

**B.      Count II: Breach of Contract**

43.     Revere incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

44.     Lender and Defendants entered into valid, binding, enforceable Loan Documents, including the Loan Agreement dated June 27, 2022, the Promissory Note in the original principal amount of $30,591,000.00, the Mortgage and Security Agreement, the Replacement Security Agreement, the Assignment and Pledge of Membership Interests, and the Repair Security Agreement. Each of these Loan Documents imposes certain obligations and requirements on Defendants, including especially the requirement to pay debt service.

45.     The Loan Documents are in writing, signed by the Defendants, supported by adequate consideration, and are sufficiently definite and reasonable in time to be enforceable.

46.     Revere performed its obligations under the Loan Documents and all applicable agreements. The Defendants' breaches caused injury to Revere and by failing to make all Debt Service Payments, Revere did not get the full benefit of the obligations owed to it by the Defendants under the Loan Documents.

47.     Specifically, Defendants are required to make the Debt Service Payments on the first day of each month.

48.     Pursuant to Section 6.1(a) of the Loan Agreement, Defendants were notified, via email, that an Event of Default occurred for Defendants' failure to make Debt Service Payments on December 1, 2023, and to cure such default by December 12, 2023. Thereafter, Defendants defaulted by failing to make the Debt Service Payments on January 1, 2024, and February 1, 2024. Defendants also failed to make the Debt Service Payment for March 1, 2024, which becomes an Event of Default if not cured by March 12, 2024.

49.     Pursuant to Section 8(d) of the Mortgage, upon an Event of Default, Defendants shall surrender to Lender the actual possession of the Mortgaged Property (as defined in the Mortgage). Lender shall have the right to enter and take possession of all or any part of the Mortgaged Property without the appointment of a receiver or an application therefor and may exclude Defendants therefrom. Furthermore, pursuant to Section 3 of the Subordination Agreement, upon an Event of Default, Lender has the right to terminate the Lease Agreements more particularly described in the Subordination Agreement.

50.     Pursuant to those Events of Default, Defendants are required to turn over their keys and any documentation related to the Facilities and surrender all rights associated with the applicable Facility.

51.     Defendants have refused to turn over the keys to the Facilities, have failed to make the Debt Service Payments, and have put the Facilities in imminent risk of irreparable harm. Defendants' failure to pay has also cause Revere to suffer damages as a result of Defendants' breaches.

52.     Because of the Defendants' wrongful breaches of the Loan Documents, Revere is entitled to damages occasioned by the breaches, attorneys' fees, litigation costs, and expenses in having to file this action and prosecute its claims against the Defendants. Specifically, Revere is entitled to its attorneys' fees and receiver's fees under the Loan Agreement, Note, and Mortgage.

## VI.
## REQUEST FOR FEES AND COSTS

53.     Section 8(f) of the Mortgage provides that Defendants "shall … upon demand" pay "all expenses, including receiver's fees, reasonable attorneys' fees, costs and agent's compensation incurred pursuant to the provisions of this Section …."

54.     Revere hereby demands that Defendants pay all expenses, including receiver's fees, reasonable attorneys' fees, costs and agent's compensation incurred as a result of the need to appoint a receiver because of Defendants' defaults. Revere further respectfully requests an order awarding any and all conditional appellate fees that may arise by any appeal filed by Defendants.

## VII.
## PRAYER

For the foregoing reasons, Revere respectfully requests the Court:

a.     Enter judgment against Defendants and awarding Revere all damages incurred as a result of Defendants' breach of the Note;

b.      Set a hearing date for emergency appointment of a temporary receivership over each of the Facilities located in Allegheny County, Beaver County, Jefferson County, Clearfield County, McKean County, and Westmoreland County;

c.      Enter an order appointing a temporary receiver with all rights set forth in Section 8(f) of the Mortgage and otherwise allowed by law; and

d.      Order Defendants to assist and cooperate in the orderly transfer of operations to a receiver;

e.      Award Revere all costs and attorneys' fees, including conditional appellate fees; and

f.      Award Revere any other and further relief to which it may be justly entitled.

Dated:  March 6, 2024                    Respectfully submitted,

                                         **COZEN O'CONNOR, P.C.**

                                         */s/Eugene A. Giotto*

                                         Eugene A. Giotto, Esq. (Pa. No. 58286)
                                         One Oxford Centre, 41st Floor
                                         301 Grant Street
                                         Pittsburgh, PA 15219
                                         Telephone: (412) 620-6560
                                         Facsimile: (412) 275-2390
                                         (egiotto@cozen.com)

                                         Rusty J. O'Kane*
                                         rusty.okane@wickphillips.com
                                         Sarah B. Cornelia*
                                         sarah.cornelia@wickphillips.com

                                         **WICK PHILLIPS GOULD & MARTIN, LLP**
                                         3131 McKinney Avenue, Suite 500
                                         Dallas, Texas 75204
                                         Telephone: (214) 692-6200
                                         Facsimile: (214) 692-6255

                                         *Applications for Admission Pro Hac Vice Forthcoming*

                                         **ATTORNEYS FOR PLAINTIFF REVERE TACTICAL OPPORTUNITIES REIT, LLC**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REVERE TACTICAL OPPORTUNITIES REIT, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| JEFFERSON HILLS ACQUISITION LLC, BEAVER HEALTHCARE REAL ESTATE, LLC, MULBERRY HEALTHCARE REAL ESTATE, LLC, RIDGEVIEW HEALTHCARE REAL ESTATE, LLC, LAKEVIEW HEALTHCARE REAL ESTATE, LLC, SCOTTDALE HEALTHCARE REAL ESTATE, LLC, JEFFERSON HILLS OPERATING LLC, BEAVER HEALTHCARE OPERATING, LLC, MULBERRY HEALTHCARE OPERATING, LLC, RIDGEVIEW HEALTHCARE OPERATING, LLC, LAKEVIEW HEALTHCARE OPERATING LLC, and SCOTTDALE HEALTHCARE OPERATING, LLC, | § § § § § § § § § § § § § § § § | CASE NO. _____ |
| Defendants. | § § | |

**VERIFICATION IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND EMERGENCY APPLICATION FOR APPOINTMENT OF RECEIVER**

My name is Travis Behl. I am over the age of eighteen (18) and am competent, qualified, and authorized to make this verification, which is within my personal knowledge, true, and correct. I am providing this Verification in my capacity as Head of Asset Management for Revere Capital Management, LP. I have read Plaintiff's Original Complaint and Emergency Application for Appointment of Receiver ("Complaint"). Except where stated upon information and belief, the facts contained in the Complaint are within my personal knowledge and are true and correct based upon my status as Head of Asset Management for Revere Capital Management, LP, my review of the exhibits attached hereto, and my personal knowledge.

I declare under penalty of perjury that the foregoing is true, correct, and within my personal knowledge.

Executed in Dallas County, State of Texas, on the 5<u>th</u> day of March, 2024.

_____
Travis Behl