IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REVERE TACTICAL OPPORTUNITIES REIT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON HILLS ACQUISITION LLC, BEAVER HEALTHCARE REAL ESTATE, LLC, MULBERRY HEALTHCARE REAL ESTATE, LLC, RIDGEVIEW HEALTHCARE REAL ESTATE, LLC, LAKEVIEW HEALTHCARE REAL ESTATE, LLC, SCOTTDALE HEALTHCARE REAL ESTATE, LLC, JEFFERSON HILLS OPERATING LLC, BEAVER HEALTHCARE OPERATING, LLC, MULBERRY HEALTHCARE OPERATING, LLC, RIDGEVIEW HEALTHCARE OPERATING, LLC, LAKEVIEW HEALTHCARE OPERATING LLC, and SCOTTDALE HEALTHCARE OPERATING, LLC, <br><br> Defendants. | CASE NO. 3:24-cv-52 |

## ORDER GRANTING EMERGENCY APPLICATION
## TO APPOINT TEMPORARY RECEIVER

Before the Court is Plaintiff Revere Tacitical Opportunities REIT, LLC's ("Plaintiff") Emergency Application for Appointment of Receiver (the "Application") over assets, accounts, and operations of Defendants Jefferson Hills Acquisition LLC, Beaver Healthcare Real Estate, LLC, Mulberry Healthcare Real Estate, LLC, Ridgeview Healthcare Real Estate, LLC, Lakeview Healthcare Real Estate, LLC, Scottdale Healthcare Real Estate, LLC (collectively, "Property Owners"), Jefferson Hills Operating LLC, Beaver Healthcare Operating, LLC, Mulberry Healthcare Operating, LLC, Ridgeview Healthcare Operating, LLC, Lakeview Healthcare Operating LLC, and

**ORDER APPOINTING RECEIVER** 1

Scottdale Healthcare Operating, LLC (collectively, "Operators" and together with Property Owners, "Defendants").

Having reviewed the Application, the exhibits and verification attached thereto, and any arguments of counsel, the Court is of the opinion that the Application should be and hereby is GRANTED. Accordingly, it is ORDERED as follows:

1. Michael F. Flanagan is hereby appointed receiver ("Receiver") of the following "Receivership Assets:"

   a. The 83-bed skilled nursing and continuing care retirement community facility known as "Jefferson Hills Healthcare and Rehabilitation Center," located in the City of Clairton, County of Allegheny, Commonwealth of Pennsylvania (the "Jefferson Project");

   b. The 67-bed skilled nursing facility known as "Beaver Healthcare and Rehabilitation Center," located in the City of Aliquippa, County of Beaver, Commonwealth of Pennsylvania (the "Beaver Project");

   c. The 75-bed skilled nursing and continuing care retirement community facility known as "Mulberry Healthcare and Rehabilitation Center," located in the City of Punxsutawney, County of Jefferson, Commonwealth of Pennsylvania (the "Mulberry Project");

   d. The 131-bed skilled nursing and continuing care retirement community facility known as "Ridgeview Healthcare and Rehabilitation Center," located in the City of Curwensville, County of Clearfield, Commonwealth of Pennsylvania (the "Ridgeview Project");

   e. The 34-bed skilled nursing and 28-bed personal care facility known as "Lakeview Healthcare Rehab and Lakeview Senior Care," located in the City of Smethport, County of McKean, Commonwealth of Pennsylvania (the "Lakeview Project"); and

   f. The 35-bed skilled nursing facility known as "Scottdale Healthcare & Rehabilitation Center," located in the City of Scottdale, County of Westmoreland, Commonwealth of Pennsylvania (the "Scottdale Project," and together with the Jefferson Project, Beaver Project, Mulberry Project, Ridgeview Project, and Lakeview Project, the "Projects").

2. Receiver shall take immediate possession and full control of the Receivership Assets and shall take such other actions as Receiver deems reasonable and appropriate to effectuate

and fulfill the purposes and mandates of this Order, to prevent waste, and to preserve, manage, secure, ensure timely and prompt payment of debt service to Plaintiff, and safeguard the Receivership Assets in accordance with the powers granted herein.

3. The Receivership Assets remain subject to Plaintiff's liens to the full extent of the amounts due and the appointment of Receiver in no way shall impair Plaintiff's rights or be deemed a waiver of Plaintiff's secured position.

4. Receiver shall have and may exercise the following powers, and such additional powers that are provided by law and that the Court may from time to time direct or confer:

    a.    take and maintain possession of all documents, books, records, papers, and

    b.    deposit accounts relating to the Receivership Assets;

    c.    change any locks, passcodes or passwords to the Receivership Assets, as appropriate and exclude Defendants and their respective agents, servants, and employees wholly from the Receivership Assets;

    d.    execute and deliver, in the name of Defendants or in Receiver's own name, such documents and instruments as are necessary or appropriate to consummate transactions authorized hereunder;

    e.    manage, operate, preserve and maintain the Receivership Assets as a prudent person would, including, without limitation, the power to enter into, terminate or negotiate contracts and make repairs or alterations to the Receivership Assets that Receiver in its business judgment reasonably believes necessary for the management, operation, preservation and maintenance of the Receivership Assets and to maximize their value;

    f.    enter into leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Receiver may deem appropriate or desirable to preserve the Receivership Assets and to maximize their value;

    g.    retain, hire, or discharge a manager for the Projects and employ such consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors, or professionals as Receiver may in its discretion deem appropriate or desirable to implement and effectuate the rights and powers herein granted;

h. engage attorneys or other professionals, as appropriate, in order to advise and assist Receiver in carrying out its duties and appearing in court or other proceedings on its behalf;

i. collect the rents, accounts receivable, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits, proceeds, earnest money deposits and profits from the Receivership Assets, if any, from any time period whether historical, current or prospective, and receive any such assets presently in the possession of Defendants and/or their agents;

j. repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

k. sue for unpaid receivables, income, or proceeds in the name of Defendants;

l. subject to Plaintiff's prior written consent, compromise or give acquittance for receivables, income, or proceeds that may become due;

m. deal with issues and other matters with vendors, municipalities, and other governmental entities, as necessary;

n. open any mail intended for and/or directed to Property Owners and/or Operators;

o. hire, fire, select, and retain employees of Defendants as Receiver deems reasonable or necessary to preserve and maintain the value of the Receivership Assets, including as necessary or desirable to provide appropriate quality resident care;

p. upon prior written consent of Plaintiff, enter into an agreement for the operation of the Projects;

q. with respect to taxes: (i) use all tax identification numbers of Defendants and cause to be filed all federal, state, and local income tax returns of Defendants for the period through termination of this receivership; (ii) communicate with, negotiate with, enter into agreements on behalf of Defendants with and serve as nonexclusive representative of Defendants to all taxing authorities; provided, however, that Receiver shall use reasonable efforts to keep all managers of Defendants apprised of all communications with taxing authorities by notice delivered to the address for such managers provided by Defendants; (iii) use reasonable efforts to issue all tax related forms on behalf of Defendants, including, without limitation, Internal Revenue Service Forms W-2, 1099, and K-1; and (iv) to the extent funds are available and authorized pursuant to the procedures set forth in this Order, pay taxes which may have been or may be levied against the Receivership Assets or which are otherwise due and payable with respect to the Receivership Assets, provided, however, that Receiver is authorized to and may pay taxes which are or become due and payable which relate to

Receiver's custody, control or operation of the Receivership Assets for the period from the date of the entry of this Order through the date the receivership is terminated and for which personal liability could be imposed;

r. take all actions necessary to maintain and/or transfer existing licenses, permits and authority from all relevant governmental agencies, managed care contracts, and third-party payor agreements, and to take all actions necessary to enroll or re-enroll the Projects in any and all available state and federal subsidy and reimbursement programs, including but not limited to Medicare and Medicaid;

s. subject to the prior written consent of Plaintiff, conduct a marketing or leasing program with respect to all or a portion of the Receivership Assets, or employ a marketing or leasing agent or agents to do so, direct the leasing or sale of all or portions of the Receivership Assets under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable, provided, however, that Receiver shall seek court approval of any sale of the Receivership Assets outside the ordinary course of business;

t. communicate and share information with prospective purchasers and provide Plaintiff with copies of such information;

u. borrow monies from Plaintiff or use Plaintiff's cash collateral, both secured by a senior and paramount lien upon the Receivership Assets for the purposes of performing Receiver's obligations under this or other orders of this Court, and preserving or enhancing the value of the Receivership Assets, on terms and conditions agreed upon by Plaintiff;

v. take possession or control of all existing bank accounts, cash and funds belonging to or for the benefit of Defendants in bank accounts associated with and/or used for the operation of the Receivership Assets (regardless from what time period), whether in the name of Defendants or their agents, and to open, transfer, and change all such bank accounts into the name of Receiver, if appropriate, or otherwise take such actions as necessary to ensure such bank accounts are under the control of Receiver and ensure Defendants do not have access to such accounts without consultation with Receiver, all in compliance with legal requirements;

w. institute, defend, or compromise actions or proceedings in state or federal courts now pending and hereafter instituted, as may in Receiver's discretion be advisable or proper for the protection and administration of the Receivership Assets;

x. retain, hire, or discharge on-site employees, if appropriate, provided, however, no such employee shall be deemed an employee of Plaintiff; and

  y. take all such further actions and enter into all such other agreements as Receiver in its professional discretion deems appropriate or desirable to preserve, protect and maximize the value of the Receivership Assets.

5. Defendants shall have neither possession nor control of, nor any right to, the Receivership Assets or money or other proceeds derived from the Receivership Assets unless and until the receivership is terminated and the Receiver is discharged, except to continue in the management of the Receivership Assets as approved and authorized by the Receiver. Defendants shall in all respects comply with this Order and are hereby enjoined and restrained from impeding or interfering in any manner with the exercise by Receiver of its rights, powers, and duties hereunder.

6. Neither Property Owners, Operators, nor any of their partners, representatives, officers, managers, directors, members, shareholders, affiliates, or agents (collectively, "Defendant Agents") shall enter into any lease, contract, or agreement of any kind or character relating to the Receivership Assets outside the ordinary course of their management duties approved by Receiver and shall not grant any lien upon or security interest in the Receivership Assets.

7. Except as authorized by Receiver, neither Property Owners, Operators, nor any of Defendant Agents shall enter or be present at any of the Projects, communicate in any manner with the employees or residents of the Projects, or modify, terminate or cause to be modified or terminated any license, permit, lease, easement, contract or agreement, if any, relating to the Receivership Assets or Projects.

8. Property Owners, Operators, and Defendant Agents are hereby enjoined and restrained from collecting, keeping, or distributing any revenues, receivables, proceeds, or other sums payable with respect to the Receivership Assets outside the ordinary course of their management duties authorized by Receiver. Should Property Owners, Operators, or any Defendant Agent come into possession of any such revenues, receivables, proceeds, or other sums subsequent

to the date of entry of this Order, Property Owners, Operators, and Defendant Agents shall promptly remit the same to Receiver in the form received.

9. Neither Property Owners, Operators, Defendant Agents, nor anyone associated therewith or acting under Property Owners' or Operators' authority or control shall: (a) remove or destroy any Receivership Assets from the Projects whether constituting collateral of Plaintiff or otherwise; (b) make any disparaging statement to residents, employees, or third parties regarding Receiver or cause such persons or entities to resign, transfer to another property associated with Property Owners or Operators or refuse to deal with Receiver; or (c) otherwise interfere with Receiver in carrying out its duties under this order and applicable law.

10. Until further order of this Court, all tenants, bailees, or other persons in possession of the Receivership Assets or any portion thereof shall turn over such Receivership Assets to Receiver, and until further order of this court (a) shall pay over to Receiver, or its duly designated agent, all rents, revenues, receivables, proceeds, or other sums payable with respect to the Receivership Assets which are now due and unpaid or hereafter become due; and (b) they are hereby enjoined and restrained from paying to Property Owners, Operators, or their agents, officers, directors, employees, or attorneys any such rents, receivables, revenues, proceeds, or other sums, except with the Receiver's consent.

11. Within five (5) calendar days from the entry of this Order, and thereafter, forthwith upon request of Receiver (but no later than five (5) calendar days following such request), Property Owners, Operators, and their agents and employees shall provide to Receiver, make available to Receiver, or cause their manager or employees to deliver or make available to Receiver the following, to the extent such items and things exist:

    a.    all Receivership Assets and all funds generated by or from the Receivership Assets, whether such funds are held in a collateral related account or not,

including but not limited to: (i) all cash on hand; (ii) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments); and (iii) all sums held in accounts in any financial institutions, including but not limited to (A) resident security deposits received by Property Owners and/or Operators, (B) deposits held in escrow by Property Owners and/or Operators for any purpose, such as for payment of real estate taxes and insurance premiums, (C) proceeds of insurance maintained for, or pertaining to, the Receivership Assets, (D) rent or prepaid rent, (E) funds designated or intended for capital improvements, repairs, or renovations to, or in connection with, the Receivership Assets, and (F) all other sums of any kind relating to the use, enjoyment, possession, improvement, or occupancy of all or any portion of the Receivership Assets;

b. copies of any and all service contracts pertaining to the Receivership Assets and/or to which any Property Owner and/or Operator is a party;

c. copies of any and all management contracts and/or agreements pertaining to the Receivership Assets and/or to which any Property Owner and/or Operator is a party;

d. copies of any and all leases, lease abstracts, purchase agreements and the like pertaining to the Receivership Assets and/or to which any Property Owner and/or Operator is a party;

e. resident and other tenant contact names, addresses, telephone numbers and email addresses;

f. all open invoices for services or goods relating to the Receivership Assets and/or to which any Property Owner and/or Operator is a party;

g. all records evidencing Property Owners' and Operators' accounts receivable, and any and all agreements, documented and undocumented, with any creditor, respecting any payment plan or agreement, demand, or suit;

h. copies of existing 2020, 2021, 2022, and 2023 year-end, and 2024 year-to-date, in both full and summary format, financial statements (and month by month detail) for Defendants, in both hard copy and electronic formats; balance sheets, income statements, accounts receivables (and receivables/arrearages aging), operating statements, current year budgets, sources and uses of cash flows, detailed rent rolls, accounts payable, check registers, security deposit listings, trial balances, general ledgers, contractor statements, lien waivers, sworn owner statements, construction draws, bank reconciliations, and bank statements, including any passwords which may be associated with any financial documents or accounts;

i. a complete set of keys (including all masters) and all security and/or access codes and/or cards to the Projects and a schedule (including full contact

     information) identifying each person or entity (including security companies, municipal/governmental agencies and utility companies), who currently has one or more keys and/or access cards to the Projects or who has knowledge of any access codes thereto;

   j. any and all records and information Defendants or their agents, affiliates or employees may have concerning the Receivership Assets, including without limitation all written and/or electronic books, records, correspondence, and other information (including any computer hardware or software login and password information) related to: (i) any agreements to which Property Owners, Operators, and/or the Receivership Assets are or may be subject; (ii) any amounts received from the residents or other tenants of the Projects, including resident funds, including revenue by payor type for each of the prior two fiscal quarters; (iii) all liens or other encumbrances on the Receivership Assets or against Property Owners and/or Operators; (iv) taxes, assessments and related appeals; (v) insurance of all types Defendants (including, but not limited to, liability, property, excess liability, auto liability, boiler and machinery, business interruption, professional liability, employee dishonesty, builders risk, construction related insurance and worker's compensation) including information regarding insurance which may be issued to Property Owners and/or Operators; (vi) all invoices for services at the Projects; (viii) all resident and other tenant files, including leases, lease abstracts, purchase agreements, and sample leases; (ix) all marketing information (in hard copy and electronic format) including but not limited to brochures, photographs (including aerial), maps, and signage; (x) copies of all state and federal tax returns signed and filed by Defendants for calendar years 2022, 2021 and 2020; and (xi) all other records related to the Receivership Assets that are or may be necessary or pertinent to Receiver's management, maintenance, operation and/or sale of the Receivership Assets;

   k. any and all insurance loss histories and/or claims related to the Receivership Assets, Property Owners, and/or Operators;

   l. all property and all other things of value associated with use, operation, and maintenance of the Receivership Assets; and

   m. all correspondence with regulators and/or licensing entities regarding the Receivership Assets.

  12. By this Order, Receiver shall be deemed a business associate of Defendants pursuant to the Health Information Portability and Accountability Act and its implementing regulations.

13. Defendants shall cause, and Receiver shall be authorized on Defendants' behalf to cause, Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Assets. Subject to the prior written consent of Plaintiff, Receiver may obtain insurance covering the Receivership Assets if insurance already in place is deemed inadequate, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Assets.

14. Defendants shall at all times after the entry of this Order provide full cooperation to, and shall not in any way interfere with, Receiver in carrying out its duties hereunder, and shall timely respond to all reasonable requests made by Receiver. Defendants' obligations pursuant to this Order shall be continuing. Neither Property Owners, Operators, nor anyone associated therewith or acting under their authority or control shall in any way directly or indirectly impair the value of the Receivership Assets or interfere with Receiver in the exercise of its duties pursuant to this Order.

15. Defendants' deposit accounts (collectively, the "Deposit Accounts") and current cash management system shall remain in place and Receiver shall deposit all proceeds of receivables, all other cash collections, and all other proceeds of Receivership Assets into Defendants' and/or the Projects' operating, payroll, or other accounts subject to account control agreements in favor of Plaintiff. Receiver is authorized to open and maintain appropriate business accounts for the Receivership Assets in institutions approved in writing by Plaintiff and subject to account control agreements in form and substance acceptable to Plaintiff. Receiver is authorized to utilize Defendants' cash management system in accordance with and subject to the terms of this Order. All deposit account agreements, blocked account agreements and similar bank account agreements that were in place prior to the entry of this Order shall remain in effect and are hereby

ratified and reaffirmed. Receiver is authorized, and Defendants are directed, to take necessary or desirable actions to effectuate this arrangement. If Receiver obtains his own financing, Receiver is permitted to enter into an agreement, acceptable to Plaintiff for funding the operations of the Projects.

16. Receiver shall pay, from the proceeds of the Receivership Assets, all such reasonable costs and expenses as shall be incurred by Receiver in the ordinary course of business in connection with the operation, maintenance, management, protection, and preservation of the Receivership Assets, including, without limitation, reasonable expenses required to put the Receivership Assets in a rentable and/or saleable market-ready condition or otherwise necessary to realize the value thereof. Neither Receiver nor Plaintiff shall be liable for any expenses incurred with regard to the Receivership Assets prior to Receiver taking possession of the Receivership Assets, nor shall Receiver or Plaintiff be required to use the Receivership Assets for payment of any expenses incurred with regard to the Receivership Assets prior to the date of this Order. Notwithstanding the foregoing, Receiver may, in Receiver's sole discretion, pay those expenses which were incurred in the normal and ordinary course of business of the Receivership Assets prior to Receiver taking possession of the Receivership Assets if, and only if, (a) Receiver determines that payment of any such pre-existing expense is necessary and critical to the ongoing operation, maintenance, management, protection, and preservation of the Receivership Assets; and (b) Receiver has received Plaintiff's prior written consent. Except as provided in, and in all events in accordance with the immediately preceding sentence, no pre-existing expenses shall be paid by Receiver. Receiver shall not be required to perform under any contract or lease entered into prior to the date on which he assumes possession of the Receivership Assets. Notwithstanding the foregoing, Receiver may, in Receiver's sole discretion, perform under such contracts or leases.

17. Receiver shall perform its obligations hereunder and make disbursements in accordance with, and subject to, the terms of this Order and the Budgets of the Projects (as defined herein). Prior to Receiver and Plaintiff's agreement on the Initial Budget, Receiver shall submit disbursement requests to Plaintiff and disbursements may be made in Plaintiff's sole and absolute discretion. Within fourteen (14) calendar days of the entry of this Order, unless Receiver and Plaintiff agree otherwise, Receiver shall deliver to Plaintiff a cash flow forecast for Defendants for the upcoming 13-week period (commencing with the calendar week in which the cash flow forecast is delivered to Plaintiff), in form and detail acceptable to Plaintiff (the "Initial Budget"). On Thursday of each calendar week after delivery of the Initial Budget (or the next succeeding business day if Thursday is not a business day), Receiver shall regularly deliver a 13-week cash flow forecast (together with the Initial Budget, the "Budgets" and, individually, a "Budget") to Plaintiff. Each Budget shall (a) be prepared on a reasonable basis and in good faith and based upon assumptions believed by Receiver to be reasonable at the time made and upon the best information then reasonably available to Receiver, and (b) be subject to review and written approval by Plaintiff. To the extent a proposed Budget is not approved, Receiver may submit a revised Budget for Plaintiff's review and written approval, it being understood and agreed that Receiver may not make any disbursements and Plaintiff shall have no obligation to fund any disbursements pursuant to this Order, the Loan Agreement or otherwise, if a Budget has not been approved for the week in which such expenses are to be disbursed. Receiver shall not make disbursements in excess of those Budgeted Items (as defined below) listed in the Budget; <u>provided</u> that there shall be an allowed 15% negative variance to the cumulative aggregate amount of disbursements scheduled to be made during the period from the Initial Budget through and including the then-current calendar week (*e.g.*, on a cumulative aggregate weekly Budgeted Item basis). Without limiting the foregoing,

notwithstanding any relief granted in any other order entered by the Court, Receiver shall not make any expenditures authorized by such orders unless, and to the extent that, such expenditures are encompassed and expressly included in this Order and the Budget. Receiver may submit disbursement requests to Plaintiff for items not covered by an Approved Budget, and such disbursements may be made in Plaintiff's sole and absolute discretion. However, nothing herein shall be construed to be limiting the discretion of Receiver with respect to his compliance with this Order.

18. Defendants shall continue to comply with their reporting requirements under the Loan Documents (as that term is defined in Plaintiff's Original Complaint and Application) following entry of this Order. To the extent Property Owners and/or Operators fail to provide the reporting, Receiver, in consultation with Plaintiff, shall use his best efforts to timely provide the reporting required under the Loan Documents. Defendants are authorized and directed to provide all information as and when required by Receiver to fulfill reporting obligations.

19. Receiver shall deliver to Plaintiff and its counsel (with a copy to Defendants) by 5:00 p.m. (Eastern time) on the first Wednesday of the calendar week after seven (7) days have passed after the approval of the first Budget, and on each Wednesday of each calendar week thereafter (in each case, for the immediately preceding calendar week) or at such time as otherwise agreed in writing by Plaintiff, in form and substance satisfactory to Plaintiff, a compliance report (the "Compliance Reports") documenting and detailing: (a) all cash receipts of Defendants and their operations; (b) all payments and disbursements made by Receiver; (c) the updated weekly actual performance compared to the Budget on both an aggregate basis and a line item by line-item basis (each particular line-item set forth on the Budget being referred to herein as a "Budgeted Item"), stating all variances and providing a narrative discussion and analysis by Receiver with

respect to any and all negative variances; and (d) such other reports as Plaintiff may reasonably request from time to time.

20. Receiver shall have no obligation to expend funds in excess of the receipts actually collected or received by Receiver. Plaintiff shall have no obligation to provide funds to Receiver. Receiver is authorized to borrow funds from Plaintiff or use Plaintiff's cash collateral, both at Plaintiff's sole discretion. Any funds borrowed from Plaintiff by Receiver shall be secured by a first, valid and perfected lien and security interest in the Receivership Assets senior to all other liens and security interests in the Receivership Assets, which lien shall be valid and perfected without the necessity of recordation, filing, or any other act of Plaintiff, and Receiver is authorized, but not required, to issue receivership certificate(s) to evidence and secure any such protective advances by Plaintiff. Receiver shall, from time to time as Receiver deems appropriate after forecasting potential needs, remit to Plaintiff any income generated by the operations of the Receivership Assets subject to Plaintiff's security interests and liens for application against the amounts which Defendants owe Plaintiff, in accordance with the terms of the Loan Documents. Loans from Plaintiff to Receiver not paid during the receivership, shall be paid as a first priority payment from the proceeds of the sale of the Receivership Assets and taxed as an administrative expense of the receivership.

21. Except in instances of willful misconduct, the liability of Receiver and any person engaged by Receiver hereunder is and shall be limited to the Receivership Assets, and neither Receiver nor any person or entity engaged by Receiver hereunder shall be personally liable for any actions taken pursuant to this Order or carrying out Receiver's duties, excepting only claims which arise from the willful misconduct of such person as determined by a final order of this or another Court of competent jurisdiction. In carrying out Receiver's duties as set forth herein, Receiver is

entitled to act in the exercise of Receiver's own sound business judgment as Receiver deems appropriate within Receiver's sole discretion subject only to the terms of this Order and applicable law. Receiver shall not be liable for any action taken or not taken by Receiver in good faith and shall not be liable for any mistake of fact or error of judgment or for any acts or omissions of any kind unless caused by willful misconduct or gross negligence. Receiver and all of his employees and agents shall be immune, each as an officer of this Court, for any personal liability of any kind arising from, caused by or in any way connected with exercising any rights or performing any duties in his capacity as Receiver. Defendants, to the extent of the value of the Receivership Assets, shall indemnify, hold harmless, and defend Receiver from and against any and all liabilities, costs, and expenses including, but not limited to, the cost of any bond required by this Order and legal and other fees and expenses incurred by Receiver arising from or in any way connected to the performance of the Receiver's duties as Receiver.

22. Defendants shall pay the costs, fees and expenses of Receiver in connection with the performance of his duties described in this Order, including the costs and expenses of those persons who may be engaged or employed by Receiver to assist him in carrying out his duties and obligations from the proceeds of the Receivership Assets. All applications for costs, fees and expenses for services rendered in connection with the receivership other than routine and necessary business expenses in conducting the receivership, such as salaries, rent and any and all other reasonable operating expenses, shall be made by application to the Court setting forth in reasonable detail the nature of the services, except however, that unless an objection is filed with the Court and served on Plaintiff's counsel and Receiver's counsel and Defendants within ten (10) days of filing the fee application, the application shall be deemed approved by all parties and this Court and Receiver is then authorized to pay such fees contained within the fee application. Receiver

shall be compensated a monthly fixed fee of $5,000.00 per month per Project, plus reimbursement for all reasonable and necessary out of pocket costs and expenses, plus a one percent (1%) sale disposition fee for any Project sold by Receiver during the receivership. Receiver's compensation shall be paid (a) in accordance with the Budget or as otherwise agreed upon in writing by Receiver and Plaintiff; (b) first from the Receivership Assets including all monies or other proceeds derived therefrom, and, next; (c) from secured advances, if any, that Plaintiff, in its sole discretion in accordance with this Order, make to Receiver to pay such fees and expenses, but only to the extent that the Receivership Assets are insufficient to pay Receiver's compensation.

23. On or before twenty-one (21) days from entry of this Order, Receiver shall file, with a copy to Plaintiff and Defendants, an inventory (the "Inventory") of all the property and assets in Receiver's possession, or in the possession of others who hold possession as Receiver's agent, and in a separate schedule an inventory of the property and assets of the estate not reduced to possession by Receiver but claimed and held by others.

24. Receiver shall make an initial report to this Court and to Plaintiff, with a copy to Defendants, on or before four (4) months from filing the Inventory regarding its initial findings. Receiver shall thereafter submit an updated status report on a quarterly basis or as otherwise ordered by the court. Copies of all such reports shall be served upon all parties appearing in this case by the court's electronic filing system.

25. Receiver may investigate any matters he deems appropriate in connection with discovering additional information as it relates to the management or administration of the Receivership Assets, Property Owners, and/or Operators. In connection with any such investigation, Receiver is authorized to compel, including by subpoena, the appearance and testimony of all persons, including Defendants, and the production of the originals of any records

and materials, of any sort whatsoever, within the possession, custody or control of any person, though Receiver's authority under this paragraph shall not be construed to require the waiver by any person of any validly asserted privilege.

26. Receiver may at any time request from the court that it be exonerated, discharged, and released from its appointment as Receiver. Receiver shall, during the pendency of this action, have the right to apply to this court for further instructions or directions.

27. As of the date of this Order, all persons and entities, including but not limited to Defendants' creditors and their respective officers, agents, representatives, and all other persons or entities acting under or in concert with such creditors are hereby placed on notice that all Receivership Assets are in custodia legis, and, as such, under the protection of this Court, immune from attachment or other legal process, and subject entirely to control by Receiver as this Court's appointee. All persons are hereby enjoined from commencing or continuing to prosecute any action against the Receivership Assets outside of this action.

28. No legal actions, administrative proceedings, self-help remedies, or any other acts or proceedings under any federal, state, or municipal statute, regulation or by-law shall be taken or continued against Receiver or the Receivership Assets, or any part thereof, without leave of this Court first having been obtained.

29. No utility or other vendor may terminate service or the provision of goods to the Receivership Assets as a result of the non-payment of pre-receivership obligations. Each utility company or entity providing service to the Projects shall forthwith transfer any deposits which it holds for the benefit of Property Owners and/or Operators to the exclusive control of the Receiver and shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such service.

30. No insurance company shall be permitted to terminate coverage or refuse coverage for the Receivership Assets based on prior unpaid premiums, claims history or because of the appointment of the Receiver pursuant to this Order. In addition, no insurance company shall be allowed to put in place more stringent payment arrangements during the term of the receivership pursuant to this Order.

31. Defendants shall not cancel any existing insurance policies on the Receivership Assets prior to the expiration of their terms.

32. The authority granted to Receiver herein is self-executing. Receiver is authorized to act in accordance with this Order on behalf of, and in Defendants' (or Receiver's) name, as Receiver deems appropriate without further order of this court and without personal recourse against Receiver (subject to any recourse described herein).

33. This Order may be modified by order of the court after notice to Receiver, Defendants, and Plaintiff or if any party brings a request before the Court for any modification hereto, including without limitation for appointment of an alternate receiver.

34. Nothing in this Order shall impair Plaintiff of its rights and remedies against any guarantor, indemnitors, or obligors of the Obligations at issue in this matter.

35. The Court shall retain jurisdiction and supervision of all matters concerning Receiver, the receivership created hereby and the Receivership Assets. Any and all actions which affect Receiver or the Receivership Assets shall be brought in this Court. Receiver may seek instructions and additional authority from this court upon written notice to Plaintiff.

36. Plaintiff does not anticipate the total monies recovered from the operation and sale of the Receivership Assets to exceed the sums due to Plaintiff. Thus, it does not appear there will be any proceeds for other creditors. Accordingly, Receiver shall not perform any claims

administration tasks. However, if it should appear to Receiver that he reasonably expects to collect more than the sums due to Plaintiff, Receiver shall provide prompt written notice to the Court and to the parties. In such a circumstance, the Court reserves the right to amend this Order to provide for claims administration.

37. This Order shall be effective immediately upon its entry and for all purposes. Within two (2) days of the entry of this Order, Receiver shall serve a copy of this Order on Defendants and within twenty-one days, upon all known creditors of Defendants. Actual notice may be accomplished by delivery of a copy of this Order by hand, U.S. mail, courier service, facsimile, email, or any other reasonable means of delivery.

38. The terms of this Order shall continue in full force and effect unless and until further order of this Court.

39. **THIS IS A FINAL APPEALABLE ORDER AND THERE IS NO JUST REASON FOR DELAY.**

SO ORDERED this ___ day of March, 2024.

_____
HONORABLE JUDGE PRESIDING