IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REVERE TACTICAL OPPORTUNITIES REIT, LLC, | ) ) ) | Case No. 3:24-cv-52 |
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| JEFFERSON HILLS ACQUISITION, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

### I. Introduction

Pending before the Court is Plaintiff Revere Tactical Opportunities REIT, LLC's ("Plaintiff") "Emergency Application for Appointment of Receiver[.]" (ECF No. 1). Because the Court writes primarily for the parties, and consistent with the emergency nature of Plaintiff's request, the Court offers a brief explanation for its decision to **GRANT** Plaintiff's request for the appointment of a temporary receiver.

### II. Background

#### A. Relevant Provisions of the Agreements Between the Parties

Plaintiff has attached the "Open-End Mortgage and Security Agreement[,]" (the "Mortgage") which is an agreement between itself and all Defendants in this action, to its Complaint. (ECF No. 1-5 at 1). Section 8(f) of the Mortgage provides as follows:

> <u>Receiver</u>. If any Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the sufficiency or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appoint of a temporary receiver to take possession of an to operate the Project and to collect and apply the Rents and Accounts. The temporary receiver

1

shall have all the rights and powers permitted under the Laws of the state where the Land is located. Upon application to a court of competent jurisdiction and compliance with the applicable laws of the state where the Land is located, such temporary receiver shall be appointed as a permanent receiver in accordance with applicable law. Borrower shall pay unto Lender upon demand all expenses, including receiver's fees, reasonable attorneys' fees, costs, and agent's compensation, incurred pursuant to the provisions of this Section, and upon Borrower's failure to pay the same, any such amounts shall be added to the Indebtedness and shall be secured by this Mortgage and the other Loan Documents.

(ECF No. 1-5 at 13).

With respect to an "Event of Default[,]" the Mortgage provides that that term "shall have the meaning ascribed to it in <u>Section 6.1</u> of the Loan Agreement, and shall include the failure of Borrower to comply with the terms and covenants in this Mortgage beyond any applicable cure period set forth herein." (*Id.* at 4). The Loan Agreement, which Plaintiff has also provided to the Court, provides that the following shall constitute an "Event of Default":

> The failure by Borrower to pay any installment of principal, interest or other payments due to Lender required under any of the Loan Documents within (10) days after the same becomes due; provided that no such ten (10) day grace period shall apply to failure by Borrower to pay the Loan Obligations in full on the Majority Date, and such failure shall constitute an immediate Event of Default[.]

(ECF No. 1-6 at 35). And, in the "Promissory Note" between the parties, Defendants agreed to pay "interest on the Loan at the Interest Rate, on the first day of each month … commencing August 1, 2022[.]" (ECF No. 1-7 at 2).[1] The Promissory Note also indicates that Defendants have ten days to cure a failure to pay interest called for by the Promissory Note. (ECF No. 1-7 at 5; ECF No. 1 at 8).

Finally, the Mortgage indicates that the "Project" constitutes the six nursing homes

---

[1] In its Complaint, Plaintiff refers to these payments as "Debt Service Payments[.]" (ECF No. 1 at 8).

2

operated by the Defendants in this action. (ECF No. 1-5 at 6–7).

B.  **Alleged Events of Default by Defendants**

Plaintiffs allege that Defendants "failed to make Debt Service Payments on December 1, 2023, January 1, 2024, and February 1, 2024, and Defendants still have not made those Debt Service Payments. Defendants' agent has conceded that each Event of Default occurred." (ECF No. 1 at 9). And Plaintiff's Complaint making this allegation is verified under penalty of perjury. (ECF No. 1 at 22–23).

Further, Plaintiffs state that "Bonamour Health Group, which owns the [nursing home facilities operated by Defendants] does not oppose the appointment of a receiver as requested" in Plaintiff's Complaint. (*Id.* at 17). Indeed, Plaintiffs provide an email from Shaya Zidele, Chief Executive Officer of Bonamour Health Group, that provides in relevant part: "please proceed with putting these facilities through the receivership process." (ECF No. 1-15 at 2).

III.  **Discussion**

A. **Legal Standard**

According to Wright and Miller, "'whether a federal court should appoint a receiver in a diversity action appears to be a question properly determined on the basis of federal law.'" *Comerica Bank v. State Petroleum Distributors, Inc.*, No. 3:08-CV-678, 2008 WL 2550553, at *3 (M.D. Pa. June 2, 2008) (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FED. PRAC. & PROC. § 2983, p. 33 (2d ed. 1997)). Further, it appears that under both federal law and Pennsylvania law, the decision of whether to appoint a receiver rests with the sound discretion of the court. *Id.* (citing *Mintzer v. Arthur L. Wright & Co.*, 263 F.3d 823, 824 (3d Cir. 1959) ("The appointment of receiver is an equitable remedy of rather drastic nature available at the discretion

of the court having jurisdiction of the subject matter and the parties."); *Northhampton Nat'l Bank of Easton v. Piscanio*, 379 A.2d 870, 873 (Pa. 1977) (noting that the "decision as to whether a receiver should be appointed is within the sound discretion of the court").

In *Comerica*, the court noted that an "example of language in a security agreement that provides consent to appoint a receiver can be found in *Metropolitan Life Ins. Co. v. Liberty Center Venture*, 650 A.2d 887 (Pa. Super. Ct. 1994)." *Id.* There, the "mortgage provided that:"

> If an Event of Default shall have occurred and be continuing, Mortgagee, upon application to a court of competent jurisdiction, shall be entitled, without notice and without regard to the adequacy of any security for the repayment of the indebtedness evidence by the Note and/or secured by this mortgage or the solvency of any party bound for its payment, to the appointment of a receiver(s) to take possession of and to operate the Property (or any portion thereof) and to collect the Rents and Profits[.]

*Comerica Bank*, 2008 WL 2550553, at *4 (quoting *Metropolitan Life Ins. Co.*, 650 A.2d at 891).

B.  Analysis

The Court finds that the language of the Mortgage between the parties to this case is almost identical to the language set forth by the *Comerica* court. Indeed, the Court finds that the language of the Mortgage plainly permits Plaintiff to obtain the appointment of a temporary receiver in the event of "any Event of Default" occurring and "continuing[,]" subject to court approval.

Further, in light of: (1) Plaintiff's sworn averment that Defendants' agent has conceded that the Events of Default set forth above have occurred, *see supra* Section II.B, (2) the fact that those Events of Default consist of three separate events that have gone on for months (i.e., they are continuous), *see id.*, and (3) the fact that the CEO of the group that owns the nursing homes operated by Defendants consents to the appointment of a receiver, *see id.*, the Court holds, for

4

purposes of this Memorandum Order only, that there have been multiple "Event[s] of Default" that have occurred and are "continuing[.]"[2] Therefore, the Court finds that it is appropriate to grant Plaintiff's request for the appointment of a temporary receiver.

Accordingly, the Court enters the following Order:

IV. Order

**AND NOW**, this 7th day of March, 2024, upon careful consideration of Plaintiff's "Emergency Application for Appointment of Receiver[,]" (ECF No. 1), the Exhibits attached thereto, and especially the consent of the CEO of the Bonamour Health Group to the appointment of a receiver, (ECF No. 1-15 at 2), **IT IS HEREBY ORDERED** that Plaintiff's request for the appointment of a temporary receiver is **GRANTED**. The Court will enter a separate Order containing more details regarding that temporary receiver. The Court stresses that, outside of appointing a temporary receiver, the Court is not granting any additional relief to Plaintiff at this time.

---

[2] The Court is also highly concerned about the allegations in the Complaint indicating that the financial difficulties of Defendants have placed the "residents and patients at six Skilled Nursing Facilities [at] an imminent risk of irreparable harm." (ECF No. 1 at 2).

5

**IT IS FURTHER ORDERED** that the Court will conduct a hearing with the parties regarding a permanent receiver on **April 4, 2024, at 1:00 P.M.** in Courtroom A—Johnstown before the undersigned.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE