UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REVERE TACTICAL OPPORTUNITIES REIT, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>JEFFERSON HILLS ACQUISITION LLC, BEAVER HEALTHCARE REAL ESTATE, LLC, MULBERRY HEALTHCARE REAL ESTATE, LLC, RIDGEVIEW HEALTHCARE REAL ESTATE, LLC, LAKEVIEW HEALTHCARE REAL ESTATE, LLC, SCOTTDALE HELATHCARE REAL ESTATE, LLC, JEFFERSON HILLS OPERATING LLC, BEAVER HEALTHCARE OPERATING, LLC, MULBERRY HEALTHCARE OPERATING, LLC, RIDGEVIEW HEALTHCARE OPERATING, LLC, LAKEVIEW HEALTHCARE OPERATING LLC, AND SCOTTSDALE HEALTHCARE OPERATING, LLC,<br><br>                Defendants. | Case No. 3:24-cv-00052-KRG |

**OPTIMUMBANK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

OptimumBank, by and through its undersigned counsel, hereby files this memorandum of law in support of its Motion for Temporary Restraining Order and Preliminary Injunction. OptimumBank seeks to prevent irreparable harm as a result of Plaintiff Revere Tactical Opportunities REIT, LLC's ("Plaintiff") taking and utilization of its collateral. Due to ongoing irreparable harm and continued risk of irreparable harm, OptimumBank seeks immediate relief.

I. INTRODUCTION

OptimumBank has a senior security interest in and lien on, inter alia, all of Defendants' accounts receivable and cash. As customary in transactions with a different dirt lender and accounts' receivable lender, OptimumBank is party to an intercreditor agreement with Plaintiff whereby Plaintiff is contractually obligated to honor OptimumBank's priority lien and subordinated its own lien thereon. In blatant violation of the intercreditor agreement, Plaintiff filed this action, without even mentioning OptimumBank's interests herein or even providing advance notice thereof to OptimumBank. There can only be one reason for these actions – Plaintiff did not want to fund its obligations as a plaintiff bringing a receivership action herein. Instead, it decided to convert, take and use OptimumBank's collateral under the guise of this Court's order without disclosing a full set of facts to this Court. This conduct cannot be condoned. It is a violation of the Uniform Commercial Code, Plaintiff's contractual obligations to OptimumBank, a conversion and, fundamentally, a taking prohibited by the Fifth Amendment.

Accordingly, OptimumBank seeks to intervene herein, as a matter of right, or in the alternative, in the exercise of the Court's discretion, to protect its collateral, recover the proceeds of its collateral converted by Plaintiff through this action and prohibit any further use of its collateral. OptimumBank further reserves its rights to seek sanctions against Plaintiff for its conduct herein and the resulting harm to OptimumBank.

II. FACTUAL BACKGROUND

A. Mortgage Loan Documents

As set forth in the Complaint initiating this action, effective June 27, 2022, Defendants entered into several agreements with Plaintiff's predecessor, Bravo Bridge Fund LLC ("Bravo Bridge"), related to a Mortgage Loan Agreement of $30,591,000.00 in connection with Defendants'

ownership and operation of the facilities. The Open-End Mortgage and Security Agreement granted a first-priority security interest in and mortgage on the properties on which Defendants operate, as well as certain items related to the operation of the facilities, to Bravo Bridge. Bravo Bridge subsequently assigned the mortgage loan and the loan documents to Plaintiff, as set forth in the Complaint.

### B. Intercreditor Agreement and OptimumBank's Interest in the Instant Action

Effective November 15, 2023, OptimumBank made a $5,000,000 revolving loan to Operators pursuant to a Loan and Security Agreement dated November 15, 2023 (as amended, restated, modified and/or supplemented from time to time, the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as Exhibit A. In connection therewith, OptimumBank was granted a lien on and security interest in all of Defendants' personal property, including, without limitation, all of its accounts (including healthcare receivables), deposit accounts and all proceeds thereof. Loan Agreement § 8.1.

As a condition to making the loan, OptimumBank required that Bravo Bridge and Defendants enter into an intercreditor agreement whereby Bravo Bridge subordinated its interest in the collateral to OptimumBank. The parties executed that certain Intercreditor Agreement dated as of November 15, 2023 (as amended, restated, modified and/or supplemented from time to time, the "Intercreditor Agreement"). A true and correct copy of the Intercreditor Agreement is attached hereto as Exhibit B.

Pursuant to the Intercreditor Agreement, "[a]t all times, whether before, during or after the pendency of any bankruptcy, reorganization or other insolvency proceeding, and notwithstanding the taking of possession of, or other exercise of rights in respect of the Mortgage Lender Priority Collateral (or any portion thereof) or the priorities that ordinarily would result … AR Lender

[OptimumBank] shall have a first and prior security interest in, upon and to the AR Lender Priority Collateral." Intercreditor Agreement § 2.1(a).

> "AR Lender Priority Collateral" includes:
>
> [A]ll right, title and interest of Operators in and to the following: (a) all Accounts arising from the delivery of goods and rendering of services by Operators prior to the Cut-Off Time and the proceeds thereof; (b) all Deposit Accounts and the proceeds thereof; and (c) all Accounts arising after the Cut-Off Time and the proceeds thereof solely to the extent of (and in the amount of) Protective Advances made after the Cut-Off Time.

The "Cut-Off Time" is triggered by written notice from Plaintiff to OptimumBank in a required form attached to the Intercreditor Agreement upon at least thirty (30) days' notice. To date, Plaintiff has not issued such notice to OptimumBank and all accounts, deposit accounts and proceeds thereof remain AR Lender Priority Collateral.

The Intercreditor Agreement further provides:

> (b) Without limiting the foregoing, following the occurrence of a Triggering Event, Mortgage Lender may deliver to AR Lender a Cut-Off Time Notice. Notwithstanding the occurrence of a Cut-Off Time, the AR Lender shall have a first and prior security interest in the AR Lender Priority Collateral, and Mortgage Lender shall have a subordinate lien in the AR Lender Priority Collateral, until the AR Loan Obligations are Paid in Full. Any Accounts arising from the delivery of goods and rendering of services by an Operator at the applicable Facility after the Cut-Off Time Notice, but prior to the Cut-Off Time, shall be AR Lender Priority Collateral notwithstanding the collection of the same after the Cut-Off Time. For the avoidance of doubt, Mortgage Lender shall have a first and prior security interest in any Accounts arising from the delivery of goods and rendering of services by each Operator at each Facility on or after the Cut-Off Time with respect to such Facility (except to the extent AR Lender makes Protective Advances), and such Accounts shall be considered Mortgage Lender Priority Collateral and not AR Lender Priority Collateral. From and after the Cut-Off Time, all amounts received by AR Lender on account of the AR Lender Priority Collateral shall be applied solely to the AR Loan Obligations. Nothing herein shall prevent AR Lender from collecting the full amount of the AR Loan Obligations from any guarantors thereof and/or from collateral other than the AR Lender Priority Collateral and/or the Mortgage Lender's Priority Collateral.

Intercreditor § 2.1(b).

Any AR Lender Priority Collateral and proceeds thereof that come into possession of Plaintiff or Defendants are to be held in trust for OptimumBank and Plaintiff and Defendants are required to turn over any AR Lender Priority Collateral and/or proceeds thereof to Plaintiff promptly upon receipt, until all of the AR Loan Obligations have been paid in full. Intercreditor Agreement § 2.3(e). Plaintiff is further bound to "not make any assertion or claim in any action, suit or proceeding of any nature whatsoever" as to the AR Lender Priority Collateral. *Id.* § 2.4.

Plaintiff was further required to provide written notice to OptimumBank if there was a default by Defendants triggering an action for the appointment of a receiver, among other things, under the Mortgage Loan Documents. *See* Intercreditor Agreement § 4.4(b)(i). Plaintiff failed to provide any such notice.

### C. Plaintiff's Complaint

On March 6, 2024, Plaintiff filed its Complaint, seeking the appointment of a receiver. Glaringly absent from Plaintiff's Complaint is any mention of the Intercreditor Agreement, OptimumBank's entitlement to the first-priority security interest in all deposit accounts and all accounts arising from the delivery of goods and rendering of services, and Plaintiff's obligations to notify OptimumBank of Owners' default. No certificate of service of the Complaint or Receiver Order has been filed to date by Plaintiff.

### III. LEGAL STANDARD

OptimumBank seeks a temporary restraining order and preliminary injunction to protect its AR Lender Priority Collateral and prevent any further use thereof pursuant to Fed. R. Civ. P. 65. "The decision to grant or deny a preliminary injunction is within the sound discretion of the district court." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Co.*, 39 F.4th 95,

109 (3rd Cir. 2022). To obtain a temporary restraining order or preliminary injunction under the Federal Rule of Civil Procedure 65, a movant must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured ... if relief is not granted .... [In addition,] the district court, in considering whether to grant [temporary or preliminary relief], should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 174 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transam. Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)); *Institute for Motivational Living, Inc. v. Sylvan Learning Center, Inc.*, 2008 WL 379654, at *2 n. 2 (W.D. Pa. 2008) (noting motions for temporary restraining orders and preliminary injunctions are governed by the same standard). Of these factors, the first two are "most critical," and a movant's failure to establish either at the "gateway" requires the denial of the requested relief. *Reilly*, 858 F.3d at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## IV.   ARGUMENT

### a. OptimumBank has demonstrated a reasonable probability of success on the merits

At this juncture, to obtain injunctive relief, OptimumBank need only "prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). This prima facie showing need only be met for one claim. *First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 234 (M.D. Pa. 2001). OptimumBank is able to prove a prima facie case on its claims.

To prove a breach of contract claim under Pennsylvania law, a plaintiff must demonstrate (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).

6

In the instant case, the existence of a valid contract, the Intercreditor Agreement, between the parties is undeniable. Further, Plaintiff breached the Intercreditor Agreement in myriad ways, including (i) converting and using AR Lender Priority Collateral prior to repayment in full of OptimumBank, (ii) asserting a senior security interest on the AR Lender Priority Collateral in violation of the Intercreditor Agreement, (iii) usurping OptimumBank's rights by filing this receivership action and obtaining an order permitting it to use the AR Lender Priority Collateral, (iii) failing to turn over all AR Lender Priority Collateral and/or proceeds thereof to Plaintiff promptly upon receipt; and (iv) failing to provide OptimumBank notice of the defaults under Plaintiff's loan agreement leading to the filing of the receivership. Intercreditor Agreement §§ 2.3(e), 2.4, 4.4(b)(i). Finally, OptimumBank suffered harm as a result of Plaintiff's breach when Plaintiff breached the terms of the contract and converted and used OptimumBank's AR Lender Collateral. Thus, OptimumBank is able to make a prima facie showing that Plaintiff breached its contractual obligations.

OptimumBank is also able to successfully plead a claim for conversion. Under Pennsylvania law, the required elements of a conversion are: (1) the deprivation of another's right of property in, or use or possession of, a chattel, or interference therewith; (2) without the owner's consent; and (3) without lawful justification. *Gabriel v. Giant Eagle, Inc.*, 124 F.Supp.3d 550, 573 (W.D. Pa. 2015) (citation omitted). "As to the type of property that may be the subject of conversion, it is clear in Pennsylvania that a cause of action for conversion may be maintained for almost all kinds of personal property, including money, notes, bonds, certificates of stock, title deeds." *Vavro v. Albers*, 2006 WL 2547350, at *13-14 (W.D. Pa. Aug. 31, 2006).

Here, OptimumBank has a clear right to the AR Lender Collateral through the Intercreditor Agreement, and Plaintiff converted and used OptimumBank's AR Lender Collateral without

OptimumBank's consent or justification. Accordingly, OptimumBank is able to make a prima facie claim of conversion.

*** 

Even though OptimumBank is required to make a prima facie showing on only one claim, it is highly likely that OptimumBank will succeed on all its claims against Plaintiff. Thus, OptimumBank goes well beyond demonstrating a reasonable probability of eventual success in the litigation, thereby satisfying the first element necessary to obtain a temporary restraining order or preliminary injunction. *See Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d at 173; *see also First Health Grp. Corp.*, 155 F. Supp. 2d at 234.

### b. OptimumBank will be irreparably injured if a preliminary injunction is not issued

OptimumBank also satisfies the second element necessary to obtain a temporary restraining order or preliminary injunction. Plaintiff has converted, taken and used OptimumBank's collateral under the guise of this Court's order without disclosing a full set of facts to this Court. OptimumBank will be irreparably injured while Plaintiff dissipates its collateral. As evidenced by Plaintiff's conduct, if Plaintiff is not enjoined from further using OptimumBank's collateral, Plaintiff will sidestep its obligations to OptimumBank, hijack the AR Lender Priority Collateral to which OptimumBank is entitled, and entirely deplete the AR Lender Priority Collateral. There will be no proceeds or cash left for OptimumBank to recover if the Plaintiff is permitted to continue its course of conduct. Therefore, OptimumBank also satisfies this element, which weighs heavily in favor of this Court issuing a temporary restraining order or preliminary injunction.

### c. The lack of harm to other interested persons and public interest favor the issuance of an injunction

As shown above, OptimumBank has a strong case on the merits and can show irreparable harm. Thus, if the Court deems it relevant, must also "assess[] the harm to the opposing party and [] the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 178 (3rd Cir. 2017). Both inquiries further support the entry of a preliminary injunction.

OptimumBank's claims are based on a contractual agreement that entitles it to the AR Lender Priority Collateral. In contrast, Plaintiff lacks any premise for converting, taking, and using OptimumBank's collateral, but still continues to do so. Therefore, the harm to OptimumBank without an injunction is that Plaintiff will dissipate the AR Lender Priority Collateral before the Court has a chance to determine the collateral's rightful owner. On the other hand, there is no harm to issuing a temporary restraining order or preliminary injunction prohibiting the conversion and use of the AR Lender Priority Collateral until this Court can decide its owner. Indeed, there is extensive harm associated with the denial of an injunction, but no harm associated with the grant of one.

Finally, the public interest in preserving the integrity of contractual agreements also weighs in favor of injunctive relief. The orderly administration of justice in accordance with contractual agreements entered into between parties would be thrown into disarray if Plaintiff was permitted to breach its contractual obligations and convert, take and use OptimumBank's collateral under the guise of this Court's order without disclosing a full set of facts to this Court. Plaintiff seeks to make the Court a tool of its wrongful scheme. This conduct cannot be condoned.

## V. CONCLUSION

For the foregoing reasons, this Court should grant OptimumBank's motion for a temporary restraining order.

9

Dated: April 1, 2024                                Respectfully Submitted,


<u>*/s/ Michael A. Iannucci*</u>
Michael A. Iannucci (PA I.D. No. 206169)
Alexander J. Bell (PA I.D. No. 327201)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5500
michael.iannucci@blankrome.com
alexander.bell@blankrome.com

Paige Barr Tinkham (*pro hac vice* forthcoming)
Kenneth J. Ottaviano (*pro hac vice* forthcoming)
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
Phone: (312) 776-2600
paige.tinkham@blankrome.com
ken.ottaviano@blankrome.com

*Counsel for Proposed-Intervenor*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 1st day of April, 2024, a true and correct copy of the foregoing document was served upon all counsel of record via the ECF filing system.

                                                       */s/ Michael A. Iannucci*
                                                         *Counsel for Proposed-Intervenor*