IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REVERE TACTICAL OPPORTUNITIES REIT, LLC, | ) ) ) | Case No. 3:24-CV-52 |
| Plaintiff, | ) ) | JUDGE STEPHANIE L. HAINES |
| v. | ) ) ) | |
| JEFFERSON HILLS ACQUISITION LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## OPINION

Presently before the Court are Movant GLC On-the-Go, Inc.'s ("GLC") Motion to Intervene (the "GLC Motion") at ECF No. 51 and Movant Heather Metts's ("Ms. Metts") Motion to Intervene, Individually and as the Administratrix of the Estate of George Downs, Deceased (the "Metts Motion") at ECF No. 64. The GLC Motion is fully briefed (ECF Nos. 51, 56, 63), as is the Metts Motion (ECF Nos. 64, 68). Accordingly, both Motions are ripe for disposition. For the following reasons, the Court **DENIES** both Motions.

I.   **Background**

Plaintiff Revere Tactical Opportunities Reit, LLC ("Plaintiff") is an institutional private credit manager. Defendants Jefferson Hills Acquisition, LLC, Beaver Healthcare Real Estate, LLC, Mulberry Healthcare Real Estate, LLC, Ridgeview Healthcare Real Estate, LLC, Lakeview Healthcare Real Estate, LLC, Scottdale Healthcare Real Estate, LLC, Jefferson Hills Operating, LLC, Beaver Health Care Operating, LLC, Mulberry Health Care Operating, LLC, Ridgeview Health Care Operating, LLC, Lakeview Health Care Operating, LLC, and Scottdale Health Care Operating, LLC (collectively, "Defendants") own and operate skilled nursing facilities.

To initiate the case, Plaintiff filed a Complaint and Emergency Application for Appointment of Receiver. (ECF No. 1). According to Plaintiff, this case stems from Defendants' material breaches to a $30,591,000.00 loan agreement, which Plaintiff alleges it loaned to Defendants in connection with their owning and operating of six skilled nursing facilities. (*Id.* at 2).

On March 7, 2024, the then-presiding judge granted Plaintiff's Emergency Application for Appointment of Receiver. (ECF No. 3). The Court entered a subsequent order containing the details regarding the Receivership. (ECF No. 4). In Paragraph 4 of the subsequent order, the Court set forth the powers that the Receiver shall and may have. (*Id.* ¶ 4).

One of those powers includes the following:

> [S]ubject to the prior written consent of Plaintiff, [Receiver may] conduct a marketing or leasing program with respect to all or a portion of the Receivership Assets, or employ a marketing or leasing agent or agents to do so, direct the leasing or sale of all or portions of the Receivership Assets under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable, provided, however, that Receiver shall seek court approval of any sale of the Receivership Assets outside the ordinary course of business[.]

(*Id.* ¶ 4(s)).[1] Pursuant to this power, counsel for the Receiver filed the "Receiver's Motion Pursuant to Order of March 7, 2024 (ECF 4), Paragraph 4(s) for Order Approving Sale of Receivership Assets" (the "Sale Motion") at ECF No. 46, as well as a "Memorandum of Law In Support of Motion of Receiver, Michael F. Flanagan, to Approve Procedures for Sale of Receivership Assets Free and Clear of Liens, Claims, and Encumbrances and Conduct of Such Sale By Public Auction" at ECF No. 47.

With the Sale Motion, the Receiver requested and moved "for the approval of the Court for the entry of an order: (i) authorizing the proposed procedures for the judicial sale of Receivership

---

[1] The Receiver's "Receivership Assets" are the six skilled nursing facilities, which all house 30+ beds, one being as large as a 131-bed facility. (ECF No. 4 ¶ 1).

2

Assets as those assets and procedures are defined in the Memorandum of Law[;] ... (ii) authorizing the Receiver to sell the identified Receivership Assets at public auction pursuant to such procedures, which include the naming of a Stalking Horse Bidder and its bid; and (iii) subject to a higher and better bid and subsequent hearing, approving the Asset Purchase Agreement and Operations Transfer Agreement." (ECF No. 46 at 1–2). The Receiver also requested that the Court "schedule[e] a hearing on the [Sale] Motion and require[e] any opposing party to show cause why the Motion and the additionally attached form of [the Proposed] Order approving the procedures of the sale should not be granted." (*Id.* at 3).

On November 26, 2024, the undersigned became the presiding judge. (ECF No. 49). After a status conference (*see* ECF No. 58), the Court entered an order, which, in relevant part, read the following:

> IT IS HEREBY ORDERED that any parties or other interested persons are to SHOW CAUSE why the [Sale] Motion should not be granted, including the proposed form of Order and Notice of Public Auction, and to present any objections and arguments in opposition to the Court at an in-person Hearing scheduled [on April 21, 2025].
> IT IS FURTHER ORDERED that any person wishing to present arguments or objections shall have entered an appearance in this matter and filed any opposing papers ... at least five (5) business days prior to the date of the Hearing. Other than the Receiver and Counsel for the Receiver and Counsel for Plaintiff, only those persons who have timely entered an appearance ... and filed opposing papers shall be permitted to present further arguments on the [Sale] Motion at the Hearing....

(ECF No. 61).

On January 27, 2025, GLC filed the GLC Motion. (ECF No. 51). Therein, GLC seeks to intervene in this matter because, according to GLC, it "is owed at least $217,680.99 for unpaid healthcare personnel and staffing services ... rendered by GLC to Lakeview Healthcare Operating LLC ... ('Lakeview') and Mulberry Healthcare Operating[,] LLC ... ('Mulberry') prior to the commencement of this case." (ECF No. 51 ¶ 1). GLC also states that it "currently provides

3

[s]taffing [s]ervices to Ridgeview Healthcare Operating[,] LLC ... ('Ridgeview') and has since the commencement of this case." (*Id.* ¶ 2). Thus, according to GLC, it "seeks to intervene for the purpose of participating in any hearing scheduled to consider the Sale Motion[,]" and it "intends to protect its interests and pursue payment due ... for [s]taffing [s]ervices rendered to Ridgeview requested by the Receiver[] that should have been remitted by the Receiver in his ordinary course of business in running ... Defendants' operations." (*Id.* ¶¶ 13–14).

GLC alleges that its interest in the case and its right to payment arises via a written medical staffing agreement (the "MSA") that GLC entered into with a company named Bonamour Health Group, LLC ("Bonamour"), which is not a party to this case. (*Id.* ¶ 9). GLC brought a prior federal lawsuit against Bonamour and its facilities—Lakeview and Mulberry—for amounts GLC contended were not paid in accordance with the MSA. *See GLC On-the-Go, Inc. v. Bonamour Health Grp.*, No. 2:23-CV-2031 (W.D. Pa. Nov. 27, 2023). According to the docket of that case, at ECF No. 13, GLC and Bonamour reached a settlement. GLC, however, alleges that Bonamour has failed to make its first monthly payment to GLC pursuant to the settlement agreement reached in the other case and now that case is stayed pursuant to this Court's March 7, 2024 order at ECF No. 4. (ECF No. 51 ¶ 4).

In short, it appears that GLC seeks to intervene in this case to ensure that the sale of Defendants Lakeview and Mulberry leaves Bonamour with sufficient resources to satisfy the settlement proceeds. (*See* ECF No. ¶ 6 ("The sale process, ... as proposed in the Sale Motion, is unreasonably truncated and not designed to maximize value for all creditors of this receivership estate."); *id.* ¶ 20 ("GLC is compelled to seek intervention in an effort to improve the prospects of a value-maximizing sale process.")).

4

On February 17, 2025, Ms. Metts filed the Metts Motion. (ECF No. 64). Therein, Ms. Metts seeks to intervene in this matter "to protect her rights as a potential wrongful death beneficiary of George Downs and, *inter alia*, obtain information from the Receiver regarding the existence of professional liability insurance and coverage, which Scottdale Healthcare [('Scottdale')] was required by Pennsylvania law to maintain." (*Id.* ¶ 1). Ms. Metts "previously filed a Writ of Summons in the Court of Common Pleas of Allegheny County, Pennsylvania …, seeking damages for injuries sustained by [Ms. Metts's] father, George Downs [('Mr. Downs')], as the result of the negligence of Scottdale …." (*Id.* ¶ 2). This Court's March 7, 2024 order at ECF No. 4 stayed that underlying personal injury case.

Because of the stay, Ms. Metts "has no information regarding the scope of the insurance policy, the coverage of Scottdale …, or whether such a policy even exists." (ECF No. 64 ¶ 15). Ms. Metts "therefore seeks to intervene to obtain information regarding Scottdale['s] … professional liability because it is necessary to ascertain both the availability and scope of coverage, as well as whether Scottdale … properly allocated assets to comply with its statutory duty to maintain such insurance." (*Id.* ¶ 16). Ms. Metts "further desires to proceed against Scottdale … and its insurance proceeds, if applicable." (*Id.* ¶ 17). In short, Ms. Metts seeks to intervene "to obtain information regarding Scottdale['s] … professional liability insurance …." (*Id.* ¶ 22).

## II.   Intervention as of Right

In relevant part, under Federal Rule of Procedure 24, a party has a right to intervene upon a timely motion to a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

"[A] litigant seeking intervention as of right under Rule 24(a)(2) must establish (1) a timely application for leave to intervene, (2) a sufficient interest in the underlying litigation, (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998)). "Each of these requirements must be met to intervene as of right." *Id.* (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).

Plaintiff concedes that GLC and Ms. Metts both timely filed their Motions. (ECF No. 56 at 7; ECF No. 68 at 7). Nevertheless, Plaintiff argues that GLC and Ms. Metts both fail to meet the second, third, and fourth factors as set forth above. (ECF No. 56 at 8–11; ECF No. 68 at 8–11). Based upon Third Circuit precedent, the Court finds that neither GLC nor Ms. Metts can satisfy the second factor of the Rule 24(a)(2) analysis.[2]

Regarding the second factor—a sufficient interest in the underlying litigation—"[i]n general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top*, 72 F.3d at 366. "Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Id.*; *see Aetna Inc. v. Insys Therapeutics, Inc.*, 330 F.R.D. 427, 433 (E.D. Pa. 2019) ("An incidental interest in the outcome of the litigation, such as a 'mere economic interest,' will not suffice to warrant intervention." (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)).

---

[2] Because the Court holds that both Motions fail under the second factor of the Rule 24(a)(2) analysis, the Court does not engage with the third or fourth factor of the analysis.

"Holding otherwise would permit every secured creditor to intervene in its debtor's litigation." *In re Stone & Webster, Inc.*, 335 F. App'x 202, 204 (3d Cir. 2009).

The exception to the mere economic rule is when "a particular fund is at issue" and the movant "claims an interest in the very property that is the subject matter of the suit." *Mountain Top*, 72 F.3d at 367. For example, in *Mountain Top*, at issue were insurance proceeds that were prescribed by a condominium association's set of bylaws and a state statute that required such proceeds to be held in trust for the benefit of all condo owners. *Id.* at 363–65. The relevant proceeds were being held in the district court registry, and the movants were condo owners. *Id.* at 367. For those reasons, the Third Circuit held that the movants had "an interest in the property over which the court ha[d] taken jurisdiction[,]" and thus had an "interest in the litigation sufficient to support intervention as of right." *Id.* at 368. The court noted, "[i]f the [movants'] only interest in the present case was to ensure that the [condominium association] would have sufficient resources to satisfy any judgment they may be able to obtain in [another] court action, the district court's reasoning and conclusion [—denying the motions to intervene under the mere economic rule—] would be sound." *Id.* at 366. The *Mountain Top* Court's hypothetical scenario emerged as the fact pattern of *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005).

*Treesdale* concerned an insurance declaratory judgment action between an insured and its insurer. *Id.* at 218. The insurer sought a declaratory judgment that it had no further duty to defend or indemnify the insured or its parent company after paying claims totaling in excess of $5 million under the insured's umbrella excess liability ("UEL") policy. *Id.* at 218–19. The movants claimed to have sustained injuries from exposure to asbestos-containing products manufactured or sold by the insured. *Id.* at 218. The movants sought to intervene, contending they had an interest in the

UEL policies because the UEL insurance proceeds "constitute a specific source or fund that is and has been providing compensation to asbestos victims like [movants] for years." *Id.* at 221.

The Third Circuit held that the movants had a mere economic interest in the insurance proceeds that failed to support intervention as of right. *Id.* at 222 ("The proceeds of the policies are not being held in an escrow account that [the movants] have a legal interest in as was the case in *Mountain Top*."). Further, the Third Circuit agreed with the district court's reasoning that the movants were not entitled to intervene as a right because the movant's "interest in the [present] action [wa]s 'contingent' upon (or a 'mere expectancy' of) success in an underlying suit, i.e., movant's tort claims against [the insured]." *Id.* at 223. "At most," the Court noted, "the declaratory judgment action may impact [the movants'] ability to collect any judgment obtained in their personal injury actions. However, that is not enough to support intervention of right under *Mountain Top*." *Id.* at 225.

Here, the GLC Motion and the Metts Motion are premised on a mere economic interest in the present litigation, and thus the movants' interests are insufficient to support intervention as of right.

Regarding the GLC Motion, GLC's interest in this lawsuit is funds that GLC claims entitlement from the Receiver pursuant to the MSA with a nonparty—Bonamour. (*See* ECF No. 51 ¶ 30 ("GLC has a sufficient interest in the instant Sale Motion and disposition of the Estate's assets, without GLC providing its input, would impede GLC's ability to collect the funds that are due and owing to GLC for its [s]taffing [s]ervices. The instant Sale Motion directly involves assets related to facilities that owe GLC for unpaid [s]taffing [s]ervices."); *id.* ¶ 38 ("GLC has a direct, legally cognizable interest in its contractual rights to the unpaid [s]taffing [s]ervices."); *id.* ¶ 39

("Disposition of this action without GLC's participation would impair GLC's ability to protect its interest in the unpaid [s]taffing [s]ervices.")).

Unlike the funds in *Mountain Top*, the funds that GLC claims entitlement to, via the MSA, are not in a particular fund that is at issue, nor are the funds the subject matter of this suit. Indeed, the other party to the MSA is not even a named defendant in the present case. Rather, this case is more analogous to *Treesdale*. Here, GLC is a creditor who has a collateral economic interest that may be affected by the present litigation. But as the Third Circuit stated, "a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene[;] [h]olding otherwise would permit every secured creditor to intervene in its debtor's litigation." *In re Stone & Webster, Inc.*, 335 F. App'x at 204 (quoting *Mountain Top*, 72 F.3d at 366); *see also Aetna Inc.*, 330 F.R.D at 433 ("[A] movant generally will not be entitled to intervene simply because 'a lawsuit may impede [that movant]'s ability to recover in a separate suit.'" (quoting *Mountain Top*, 72 F.3d at 366)). Therefore, the Court finds that GLC does not have a sufficient interest in the underlying litigation to intervene as of right.[3]

Turning to the Metts Motion, the analysis is largely similar. Here, Ms. Metts is seeking to intervene "to obtain information regarding Scottdale['s] ... professional liability insurance ...." (ECF No. 68 ¶ 22). The information that Ms. Metts is seeking is tied to an interest in insurance proceeds that Ms. Metts may or may not have a right to, depending on the outcome of her state litigation. Under Third Circuit precedent, such an interest is barred by the mere economic rule,

---

[3] In its Reply, GLC raises the issue of the Sale Motion's "Free and Clear Sale" provision and alleges that "the effect of this litigation would be the complete foreclosure of GLC's right to protect its interest in any other future litigation because the Sale Motion provides for full release of successor liability." (ECF No. 63 at 4, 10). First, the Court has not yet granted nor denied the request of the free and clear sale. Second, if the Court were to grant such a request, even then, GLC's interest remains a mere economic interest: ensuring that Defendants Lakeview and Mulberry, and thus Bonamour, have sufficient resources to satisfy any judgment that GLC may be entitled to receive from Bonamour.

and thus insufficient to meet the second requirement of intervention as a right. *See Treesdale*, 419 F.3d at 222, 224; *see also KnightBrook Ins. Co. v. Del Val Staffing, LLC*, No. 13-CV-2825, 2013 WL 4665945, at *3 (E.D. Pa. Aug. 30, 2013) ("[T]his Court concludes that Petitioners' only interest in intervening in this matter—like that in *Liberty Mutual*—is a 'mere economic interest' in the insurance proceeds and not a 'property or other legally protectable interest.'"). Accordingly, the Court finds that Ms. Metts does not have a sufficient interest in the underlying litigation to intervene as of right.

### III.   Permissive Intervention

Federal Rule of Procedure 24 provides in relevant part: "On timely motion, the court may permit anyone to intervene who: … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). In *Treesdale*, the Third Circuit denied permissive intervention because the declaratory judgment action at issue concerned the relevant insurance contract, whereas the movants' personal injury claims turned on whether the movants' injuries were caused by the defendants. *Treesdale*, 419 F.3d at 227–28 ("The declaratory judgment action turns on the interpretation of the contracts of insurance between [the insured] and [the insurer]. It has nothing to do with whether [the insured] caused asbestos-related bodily injuries to [the movants] or anyone else. Similarly, the personal injury suits against [the insured] have nothing to do with interpreting [the insured's] insurance policies with [the insurer].").

Here, neither GLC nor Ms. Metts has a claim or defense that shares with the present main action a common question of law or fact. Regarding GLC, the GLC Motion illustrates that the questions of law or fact that are relevant to GLC's concerns relate to the MSA—and not the loan agreement at issue, which was entered into between Plaintiff and Defendants, nor the sale of the Receivership Assets. Similarly, regarding Ms. Metts, the Metts Motion demonstrates that any

10

questions of law or fact relevant to Ms. Metts regard Scottdale's treatment of Mr. Downs and Scottdale's insurance coverage—topics that are unrelated to the contract dispute between Plaintiff and Defendants and the sale of the Receivership Assets. Accordingly, the Court holds that permissive intervention is inappropriate here.

### IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Movant GLC On-the-Go, Inc.'s Motion to Intervene at ECF No. 51 and Movant Heather Metts's Motion to Intervene, Individually and as the Administratrix of the Estate of George Downs, Deceased at ECF No. 64.

An appropriate Order will follow.

DATE: April 11, 2025

*/s/ Stephanie L. Haines*
**STEPHANIE L. HAINES**
**UNITED STATES DISTRICT JUDGE**